[Cite as *State v. Bingham*, 2019-Ohio-3324.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO. 1-18-71

    v.

LEONARD BINGHAM, JR.,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2016 0142

**Judgment Affirmed**

Date of Decision:    August 19, 2019

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *Jana E. Emerick* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Leonard Bingham, Jr. ("Bingham"), appeals the December 20, 2018 judgment of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} In February 2016, the Lima Police Department became aware of potential drug activity taking place at 419 South Collett Street ("419 S. Collett") in Lima, Ohio—a residence that was then owned by Bingham. Over the following one and one-half months, law enforcement officers received numerous reports documenting activity at 419 S. Collett that was consistent with drug trafficking, including the observation of what witnesses believed to be drug transactions in a parking lot adjacent to the residence. On March 30, 2016, law enforcement officers, with the participation of a confidential informant, conducted a controlled buy of marijuana from 419 S. Collett. Based on this controlled buy and the collection of citizen reports, law enforcement officers subsequently obtained a warrant to search the residence, which was executed on the evening of April 1, 2016. During the course of the search, officers discovered a firearm and a small quantity of crack cocaine concealed within a shoebox that Bingham was seen carrying into the residence. Furthermore, the search uncovered a gallon-size freezer bag full of marijuana, other, smaller quantities of marijuana and cocaine, and materials evidently used to manufacture crack cocaine.

{¶3} On May 12, 2016, the Allen County Grand Jury indicted Bingham on four counts: Count One of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(e), a first-degree felony; Count Two of illegal manufacture of drugs in violation of R.C. 2925.04(A), (C)(2), a second-degree felony; Count Three of having weapons while under disability in violation of R.C. 2923.13(A)(3), (B), a third-degree felony; and Count Four of possession of marihuana in violation of R.C. 2925.11(A), (C)(3)(c), a fifth-degree felony. (Doc. No. 2). On May 19, 2016, Bingham filed written pleas of not guilty, which were accepted by the trial court on May 20, 2016. (Doc. Nos. 7, 11).

{¶4} On September 6, 2016, Bingham filed a motion to suppress evidence. (Doc. No. 27). On September 12, 2016, Bingham filed a supplement to his motion to suppress. (Doc. No. 29). On September 22, 2016, the State filed a memorandum in opposition to Bingham's motion to suppress. (Doc. No. 36). On September 23, 2016, Bingham filed his reply to the State's memorandum in opposition to his suppression motion. (Doc. No. 37). On October 27, 2016, the trial court denied Bingham's motion to suppress evidence. (Doc. No. 55).

{¶5} On September 1, 2017, Bingham filed a second motion to suppress evidence. (Doc. No. 144). On September 5, 2017, the trial court denied Bingham's second suppression motion on the basis that the motion was the "exact same motion" as the one denied in October 2016. (Doc. No. 146). On September 7, 2017,

Bingham filed a motion for reconsideration of the trial court's judgment denying his second motion to dismiss. (Doc. No. 147). In support of his motion for reconsideration, Bingham argued that the "majority of the new Motion to Suppress * * * contains different arguments and cites case law not contained in the old Motion to Suppress * * *." (*Id.*). In response, the trial court ordered Bingham to submit affidavits or other evidentiary material supporting his new claims, which Bingham did on October 13, 2017 by filing two affidavits suggesting that the affidavit used to obtain the search warrant for 419 S. Collett contained materially false or misleading statements. (Doc. Nos. 152, 175). Following a December 20, 2017 hearing on Bingham's second motion to suppress, the trial court denied the motion on December 27, 2017. (Doc. No. 217).

{¶6} On January 19, 2018, Bingham filed a "Motion to Reopen Evidence as to Motion to Suppress filed 9/1/17 and to Reconsider Denial of Same." (Doc. No. 234). In this motion, Bingham asked that the trial court reconsider his second motion to suppress evidence because his former trial counsel ineffectively argued the motion.[1] (*Id.*). Although the trial court did not reconsider its decision on his second suppression motion, upon leave of court, Bingham filed a third motion to

---

[1] Following the denial of his first motion to suppress evidence, Bingham's original trial counsel withdrew from his representation of Bingham, and Bingham subsequently hired different trial counsel. After his second motion to suppress was denied, Bingham's second trial counsel was permitted to withdraw from his representation of Bingham. Thereafter, Bingham reengaged the services of his original trial counsel, who represented Bingham throughout the remainder of the trial proceedings.

suppress evidence on March 2, 2018. (Doc. Nos. 257, 267). Hearings on Bingham's third motion to suppress evidence were held on July 26 and August 21, 2018. (*See* Doc. Nos. 331, 334, 357, 359, 362). On August 24, 2018, the trial court denied Bingham's third motion to suppress evidence. (Doc. No. 362).

**{¶7}** Meanwhile, on April 13, 2018, Bingham filed a motion to dismiss the indictment. (Doc. No. 282). On April 17, 2018, the State filed a memorandum in opposition to Bingham's motion to dismiss. (Doc. No. 285). On April 19, 2018, Bingham filed a reply to the State's memorandum in opposition to his motion to dismiss. (Doc. No. 286). On April 23, 2018, the trial court denied Bingham's motion to dismiss. (Doc. No. 287).

**{¶8}** A change of plea hearing was held on October 26, 2018. (Doc. Nos. 392, 394). Under a negotiated plea agreement, Bingham withdrew his previous not guilty pleas and entered pleas of no contest to the counts of the indictment. (Doc. Nos. 393, 394). In exchange, the State agreed that it would not oppose the issuance of a $250,000 appellate bond. (Doc. No. 393). The trial court accepted Bingham's no contest pleas, found him guilty, and ordered a presentence investigation. (Doc. No. 394).

**{¶9}** On November 27, 2018, Bingham filed a motion to withdraw his no contest pleas. (Doc. No. 399). Although Bingham initially indicated that he wished to withdraw all of his pleas, at the hearing on his motion to withdraw, Bingham

clarified that he wanted to withdraw his pleas only as to Counts One and Two. (Dec. 11, 2018 Tr. at 5-6). On December 17, 2018, the trial court denied Bingham's motion to withdraw his no contest pleas. (Doc. No. 408).

{¶10} Bingham's sentencing hearing was held on December 20, 2018. At the sentencing hearing, the trial court determined that Counts One and Two would merge for purposes of sentencing. (Doc. No. 410). The State elected to sentence Bingham on Count One. (*Id.*). The trial court sentenced Bingham to 10 years in prison on Count One, 24 months in prison on Count Three, and 12 months in prison on Count Four. (*Id.*). The trial court ordered that the sentences for Counts One and Three be served consecutively to each other. (*Id.*). Furthermore, the trial court ordered that the sentence for Count Four be served concurrently with the consecutive sentences imposed for Counts One and Three. (*Id.*). Thus, the trial court sentenced Bingham to an aggregate term of 12 years' imprisonment. (*Id.*).

{¶11} On December 27, 2018, Bingham filed a notice of appeal. (Doc. No. 414). He raises three assignments of error for our review.

**Assignment of Error No. I**

**The Trial Court should have dismissed the Indictment for insufficient number of jurors because Crim.R. 6(A) is unconstitutional, in violation of Article I, Section 10, of the Ohio Constitution and R.C. §2939.02.**

{¶12} In his first assignment of error, Bingham argues that the trial court erred by denying his motion to dismiss. Specifically, Bingham argues that the

-6-

indictment against him should have been dismissed because the grand jury that returned the indictment was not lawfully impaneled. Bingham notes that he was indicted by a 9-member grand jury pursuant to Crim.R. 6(A). However, he contends that the portion of Crim.R. 6(A) setting the number of grand jurors necessary to constitute a grand jury at 9 violates the Ohio Constitution. He argues that under the Ohio Constitution, the Ohio legislature has exclusive authority to determine the number of persons necessary to constitute a grand jury and the legislature has done so by enacting R.C. 2939.02, which provides that "[g]rand juries shall consist of fifteen persons * * *." Therefore, according to Bingham, because the grand jury that returned his indictment did not consist of the requisite 15 members, the indictment is "voidable [and] subject[] * * * to dismissal" and the trial court erred by concluding otherwise. (Appellant's Brief at 9).

{¶13} This court recently considered and rejected an identical challenge to the constitutionality of Crim.R. 6(A)'s 9-member grand jury requirement and reaffirmed that Crim.R. 6(A) supersedes R.C. 2939.02 to the extent that the two are in conflict. *See State v. Holmes*, 3d Dist. Allen No. 1-18-52, 2019-Ohio-2485, ¶ 10-18. We need not reproduce those efforts here. Because the grand jury that indicted Bingham consisted of 9 grand jurors, the minimum number required under the constitutionally valid and superior provisions of Crim.R. 6(A), the grand jury that

indicted Bingham was lawfully impaneled. *See id.* at ¶ 17. Accordingly, the trial court did not err by denying his motion to dismiss the indictment. *See id.*

{¶14} Bingham's first assignment of error is overruled.

## Assignment of Error No. II

**The Trial Court erred by not suppressing the fruits of the tainted search warrant.**

{¶15} In his second assignment of error, Bingham argues that the trial court erred by denying his motion to suppress evidence. In particular, Bingham argues that the affidavit relied on to secure the search warrant for 419 S. Collett contained materially false information and omitted critical information that would have affected the issuing judge's probable cause determination. (Appellant's Brief at 20-22). Bingham contends that once the incorrect information is excised from the affidavit and the omitted information is included, the affidavit does not support a determination that probable cause existed to search 419 S. Collett and the trial court erred by concluding otherwise. (*Id.* at 18, 22).

{¶16} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact

if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

**{¶17}** The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "Probable cause 'means less than evidence which would justify condemnation,' so that only the 'probability, and not a prima facie showing of criminal activity is the standard of probable cause.'" *State v. Gonzales*, 3d Dist. Seneca Nos. 13-13-31 and 13-13-32, 2014-Ohio-557, ¶ 18, quoting *State v. George*, 45 Ohio St.3d 325, 329 (1989).

> In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*George* at paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317 (1983). Generally, "neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause." *Id.* at paragraph two of the syllabus, citing *Gates*. "In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, * * * appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.*, citing *Gates*.

{¶18} "'There is * * * a presumption of validity with respect to the affidavit supporting [a] search warrant.'" *State v. Jackson*, 9th Dist. Lorain No. 14CA010593, 2015-Ohio-3520, ¶ 10, quoting *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674 (1978). However, search-warrant affidavits are not unassailable. To attack the integrity of a search-warrant affidavit, a defendant must first "make[] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit * * *." *Franks* at 155-156. "'Reckless disregard' means that the affiant had serious doubts of an allegation's truth." *State v. Waddy*, 63 Ohio St.3d 424, 441 (1992), *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997), citing *United States v. Williams*,

737 F.2d 594, 602 (7th Cir.1984). "Omissions count as false statements if 'designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate.'" *Id.*, quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir.1990). However, with respect to omissions, some Ohio courts of appeals have concluded, "'[E]xcept in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, * * * *Franks* is inapplicable to the omission of disputed facts.'" (Emphasis sic.) *State v. Blaylock*, 2d Dist. Montgomery No. 24475, 2011-Ohio-4865, ¶ 15-16, quoting *Mays v. Dayton*, 134 F.3d 809, 816 (6th Cir.1998); *State v. Bangera*, 11th Dist. Geauga No. 2015-G-0021, 2016-Ohio-4596, ¶ 62-64.

{¶19} "A defendant who seeks to overcome the presumption of validity accorded a warrant affidavit by making a substantial preliminary showing of a knowing, intentional, or reckless falsity, has * * * the task of supporting his allegations by more than conclusional accusations, or the mere desire to cross-examine." *State v. Roberts*, 62 Ohio St.2d 170, 177-178 (1980). The defendant must support his challenge to the affidavit by "an offer of proof which specifically outlines the portions of the affidavit alleged to be false, and the supporting reasons for the defendant's claim." *Id.* at 178. "This offer of proof should include the

submission of affidavits or otherwise reliable statements, or their absence should be satisfactorily explained." *Id.*

**{¶20}** Once the defendant has made the required preliminary showing, he must then demonstrate that the allegedly false statement is necessary to the finding of probable cause. *Franks* at 156. "'[A] warrant * * * is still valid unless, "with the affidavit's false material set to one side [or with the omissions included], the affidavit's remaining content is insufficient to establish probable cause * * *."'" *State v. Sells*, 2d Dist. Miami No. 2005-CA-8, 2006-Ohio-1859, ¶ 11, quoting *Waddy* at 441, quoting *Franks* at 156. If a defendant succeeds in establishing that the affidavit's purportedly false information is necessary to the finding of probable cause or that information omitted from the affidavit would operate to negate the probable-cause finding, "the Fourth Amendment requires that a hearing be held at the defendant's request." *See Franks* at 156. However, absent such a demonstration, the Fourth Amendment does not require a special evidentiary hearing to review the validity of the search warrant. *Roberts* at 178.

**{¶21}** At the hearing, the defendant must then prove by a preponderance of the evidence that the affiant intentionally or recklessly included a false statement in the affidavit or, in the case of an omission, excluded critical information from the affidavit with the intention to mislead. *See Franks*, 438 U.S. at 156; *Blaylock*, 2011-Ohio-4865, at ¶ 15-16. If the defendant meets his burden of proof, the court must

then redact the false statement from the affidavit or introduce the omitted information into the affidavit. If the affidavit's content with the false statement removed or with the omitted information included is insufficient to support a finding of probable cause, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *See Franks* at 156. *See United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405 (1984).

**{¶22}** On appeal, Bingham argues that three paragraphs of the search-warrant affidavit contain materially false statements. He also argues that critical information is omitted from one of these paragraphs. These paragraphs read:

13. Within the last 72 hours, the Task Force performed a controlled drug transaction using [a confidential informant] to purchase a known amount of Marijuana from Leonard Bingham for a known amount of money. During this the C.I. drove to 419 S. Collett to meet with Leonard. The C.I. parked his/her vehicle in the stone lot to the south of the house.

14. Investigators were maintaining visual surveillance on 419 S. Collett. Investigators watched the C.I. walked around to the back of the residence. Almost immediately the C.I. is heard knocking on a

door. After a short time, the C.I. was heard leaving and then seen walking from the back of 419 S. Collett.

15. Investigators followed the C.I. back to a prearranged location and took possession of the marijuana. The marijuana was field tested and found to be positive for the presumptive presence of marijuana.

(July 26, 2018 Tr., State's Ex. 1).

**{¶23}** Bingham argues that the foregoing paragraphs are materially false or misleading in three ways. First, Bingham argues that because law enforcement officers were aware at the time of the controlled buy that the confidential informant allegedly planned to purchase marijuana at 419 S. Collett from Joel Pea ("Pea"), rather than Bingham, paragraph 13 of the search-warrant affidavit contains a false statement. Bingham also argues that paragraph 13 contains a material omission because by identifying Bingham as the person with whom the confidential informant allegedly met to purchase marijuana, the affidavit necessarily omits the fact that it was actually Pea with whom the confidential informant supposedly met. He contends that when Pea is properly identified as the alleged seller of the marijuana, the affidavit does not contain sufficient information to support a finding of probable cause to search 419 S. Collett. In addition, Bingham argues that the controlled buy detailed in paragraphs 13 through 15 of the affidavit did not actually take place and that paragraphs 13 through 15 are thus entirely false.

**{¶24}** With regard to Bingham's argument that paragraph 13 of the affidavit contains false statements, the State "acknowledges that the drugs sold during the controlled buy referenced in Paragraphs 13, 14, and 15 of the affidavit were not sold by [Bingham] but, rather, apparently sold by a different individual." (Appellee's Brief at 11-12). The State "concedes that naming [Bingham] as the person from whom the confidential informant purchased marijuana was a false statement that would appear to have been made with reckless disregard for the truth, and the statement was certainly included by the affiant in the warrant affidavit." (*Id.* at 12). Thus, we will assume that the references to Bingham in paragraph 13 of the search-warrant affidavit are false statements that were included by the affiant with reckless disregard for the truth of the statements.[2]

**{¶25}** However, before determining whether the trial court erred by holding that the affidavit supports a finding of probable cause even when the references to Bingham are removed from paragraph 13, we must consider Bingham's claim that

---

[2] Although we assume that references to Bingham in paragraph 13 of the search-warrant affidavit were included with reckless disregard for the truth of those references, we question whether that is actually the case. As noted above, for a statement to have been included in an affidavit with reckless disregard for the truth, the search-warrant affiant must have harbored "serious doubts of an allegation's truth." *Waddy*, 63 Ohio St.3d at 441. After reviewing the testimony of the search-warrant affiant, whom the trial court found to be credible, it appears as though the affiant did not even realize that paragraph 13 of the search-warrant affidavit contained a false statement until well after the search warrant was obtained. Rather, the references to Bingham in paragraph 13 seem to have resulted from the search-warrant affiant's negligence in preparing and reviewing the affidavit. Under *Franks*, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth * * *. Allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171. However, in light of our conclusion below that the references to Bingham in paragraph 13 are not necessary to the finding of probable cause to search 419 S. Collett, we need not consider the matter further.

paragraphs 13 through 15 of the search-warrant affidavit are false in their entirety. In arguing that paragraphs 13 through 15 of the search-warrant affidavit are entirely false, Bingham notes that Pea "was never charged with trafficking in marijuana," that there "were * * * suspicious claims by law enforcement * * * that '[their] electronic recording device malfunctioned and there was no recording of [the controlled buy],'" and that the State "never produced any pictures of the alleged marijuana or any tests on the same." (Appellant's Brief at 21). He contends that the confidential informant actually "denie[d] even wearing a wire." (*Id.*). Furthermore, he observes that Pea "testified at the hearing that he did not make any sale to any confidential informant and was not even in Lima, Ohio on the date of the claimed controlled buy." (*Id.*). He argues that, taken together, all of these irregularities point to the controlled buy "being nonsense." (*Id.* at 21-22).

{¶26} Pea and Bingham both testified at the suppression hearing. Pea testified that at some point on March 30, 2016, he was in Columbus to support his brother as his brother underwent rotator cuff surgery. (Aug. 21, 2018 Tr. at 24). He stated that he did not return to Lima until approximately 11:00 p.m. that evening and that he was never anywhere near 419 S. Collett. (*Id.* at 25-26, 28). In addition, Bingham testified that Pea was not present at 419 S. Collett on March 30, 2016. (*Id.* at 32-33). Bingham did testify, however, that he, Bingham, was present at 419 S. Collett on March 30, 2016 when the confidential informant arrived. (*Id.* at 31).

-16-

Bingham stated that the confidential informant came inside 419 S. Collett on March 30, 2016 to deliver fish for his mother. (*Id.* at 32-33). Bingham testified that he did not discuss drugs with the confidential informant. (*Id.* at 33).

{¶27} In contrast, the confidential informant testified that on March 30, 2016, he "went [to 419 S. Collett] and * * * bought some weed from Joel Pea out in the back yard * * *." (*Id.* at 9-10, 16-17). He stated that he was acting as a confidential informant at the time although he "didn't have no wire up or nothing." (*Id.* at 11, 15). The confidential informant testified that prior to driving to 419 S. Collett, he did not call ahead to arrange to purchase drugs from a particular person. (*Id.* at 14). Instead, he drove to 419 S. Collett because it was his understanding that he could purchase drugs from any number of persons present at the house. (*Id.*). He testified that upon arriving at 419 S. Collett, he "called [Pea] out" to the backyard where Pea sold him marijuana. (*Id.* at 15-17). He reiterated that he was not wearing a "wire" and that he did not know whether a recording of the controlled buy existed. (*Id.* at 15).

{¶28} The confidential informant testified that after making the buy, he met with law enforcement officers, gave them the marijuana he had just purchased, and informed them that the marijuana had been purchased from Pea. (*Id.* at 17). He stated that he could not recall entering the residence located at 419 S. Collett on March 30, 2016, but he could not say whether he told law enforcement officers that

he did not enter the residence. (*Id.* at 17-18). Finally, the confidential informant testified that he had since learned that Pea was in Columbus at some point on March 30, 2016, but he maintained that he purchased marijuana from Pea that day and that he may have done so before Pea left for Columbus or after he returned. (*Id.* at 20-21).

**{¶29}** Officer Dustin Brotherwood ("Officer Brotherwood"), the search-warrant affiant, also testified regarding the circumstances of the alleged controlled buy on March 30, 2016. Officer Brotherwood stated that the confidential informant was fitted with a recording device prior to making the controlled buy and that the device was found to be in working order. (July 26, 2018 Tr. at 33-34). However, he acknowledged that there was no recording of the controlled buy, and he attributed the absence of a recording to a "malfunction of some sort" with the recording device. (*Id.* at 34). Officer Brotherwood testified that he received the marijuana from the confidential informant, tested it, and marked it into evidence. (*Id.* at 35-36). Finally, he stated that the confidential informant told him that he would be purchasing marijuana from Pea, although he acknowledged that he did not arrest or interview Pea in connection with the controlled buy and that Pea was never charged with drug trafficking. (*Id.* at 16, 32, 36).

**{¶30}** Regarding Bingham's claim that there was no controlled buy on March 30, 2016, the trial court found:

-18-

> [T]he fact that [Officer] Brotherwood stated in his affidavit that marijuana was purchased at 419 S. Collett is not a falsehood. * * * [Bingham] and [Pea] testified they did not sell drugs to the CI at 419 S. Collett. The Court finds that the contrary testimony of [Bingham] and Pea as compared to the CI's testimony does not by itself create a falsehood in the affidavit presented to the Court in April 2016 as to whether drugs were purchased by the CI. The discrepancies in the witnesses['] testimony presented a question of credibility at the hearing that the Court resolves in favor of the presumed validity of the affidavit.

(Doc. No. 362).

**{¶31}** We conclude that competent, credible evidence supports the trial court's finding that the controlled buy transpired in the manner described by Officer Brotherwood in his affidavit. Because the trial court was not presented with a recording of the alleged controlled buy, the only evidence it could use to assess the veracity of paragraphs 13 through 15 was the conflicting testimony of Bingham, Pea, Officer Brotherwood, and the confidential informant. As previously noted, "the trial court was in the best position to resolve factual questions and evaluate the credibility of the witnesses." *State v. Shuttlesworth*, 3d Dist. Hancock No. 5-14-13, 2014-Ohio-5206, ¶ 25, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Here,

the trial court credited Officer Brotherwood's and the confidential informant's testimony that a controlled buy of marijuana took place on March 30, 2016 as detailed in paragraphs 13 through 15. We have found nothing in the record requiring this court to upset the trial court's finding and we thus defer to the trial court's credibility determination. Therefore, we conclude that the trial court did not err by finding that Bingham failed to demonstrate the falsity of paragraphs 13 through 15 by a preponderance of the evidence.

{¶32} In sum, the trial court found that Bingham did not prove that paragraphs 13 through 15 are wholly false, and this finding is supported by competent, credible evidence. However, as discussed earlier, the State concedes that paragraph 13 of the affidavit contains false statements, and we assume, as the trial court did, that these statements were included in the search-warrant affidavit with reckless disregard for their truth. Thus, we must now determine whether the trial court erred by holding that the false statements in paragraph 13 are not necessary to the finding of probable cause to search 419 S. Collett.

{¶33} In rejecting Bingham's argument that mentions of his name in paragraph 13 of the search-warrant affidavit are necessary to the finding of probable cause to search 419 S. Collett, the trial court concluded:

In reviewing the sufficiency of probable cause in the affidavit

submitted in support of a search warrant in this case without the

misstatement, the court finds it had a substantial basis for concluding that probable cause existed. * * * In this instant case, sufficient probable cause supported the search warrant for the house at 419 S. Collett. [Officer] Brotherwood's affidavit indicated that the confidential informant made a controlled purchase (from someone) from [Bingham's] house. [Officer] Brotherwood also mentioned and the affidavit relied on [Officer] Brotherwood's own personal knowledge of other complaints that drugs were being sold at 419 S. Collett. * * * [Officer] Brotherwood's affidavit was sufficiently clear in describing the house to be searched and the affidavit described conduct at that residence that was consistent with drug trafficking.

(Citations omitted) (Doc. No. 362). Bingham suggests that the trial court "made a big deal * * * that it is not important who sold the drugs as long as someone sold the drugs out of [419 S. Collett]." (Appellant's Brief at 22). He argues that "this premise is false" and that "[w]ho makes a sale from a location does matter if that 'who' has no substantial ties to that location." (*Id.*). Bingham concludes that the trial court "redacted the incorrect information but missed that the correct information omitted by * * * Brotherwood is the key." (*Id.*). According to Bingham, what matters is that "someone who does not live [at 419 S. Collett] but was visiting allegedly * * * sold marijuana out of that house" because "[t]hat fact

makes the presence of [Pea's] marijuana much less likely than some unknown person who might be associated as a resident." (*Id.*).

{¶34} Bingham's argument is without merit. The trial court did not err by denying Bingham's motion to suppress because even when Bingham's name is removed from paragraph 13 of the search-warrant affidavit, the affidavit contains sufficient information from which a magistrate could conclude that there was a fair probability that drugs or evidence of drug trafficking would be discovered inside of 419 S. Collett. The affidavit first documents that in February 2016, Officer Brotherwood spoke with an identified individual at the Lima Police Department who informed him that "he went to 419 S. Collett to buy weed," that "[Bingham] came out of the house and sold him a bag of weed" and that he "was then pulled over by the [Lima Police Department]." (July 26, 2018 Tr., State's Ex. 1). Furthermore, Officer Brotherwood stated that the individual "said he has been buying weed from [Bingham] for several years * * * and has always went to [419 S. Collett]." (*Id.*). Thus, from the inception of the investigation, 419 S. Collett was targeted as the nexus of ongoing drug-trafficking activity.

{¶35} Certainly, the informant's apparent involvement in criminal activity and the lack of any attestation as to his credibility have some bearing on the reliability of the informant's tip. However, an informant's involvement in criminal activity does not automatically render him unreliable, especially where, as here, the

informant's identity is known. *See Smith v. Barber*, 316 F.Supp.2d 992, 1014 (D.Kan.2004), citing *United States v. Dennis*, 625 F.2d 782 (8th Cir.1980). Instead, an informant's criminal history and the lack of assurances about the informant's reliability are but factors for the magistrate to consider when evaluating the totality of the circumstances to support probable cause to issue a warrant. Ultimately, "'an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information.'" *United States v. Jackson*, 470 F.3d 299, 307 (6th Cir.2006), quoting *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir.2004).

**{¶36}** Here, the affidavit presents sufficient information corroborating the informant's tip about 419 S. Collett's status as a base of drug-trafficking activities. The affidavit states that in the weeks leading up to the controlled buy, law enforcement officers received numerous reports concerning high-volume, short-term traffic centered around 419 S. Collett. (July 26, 2018 Tr., State's Ex. 1). Coupled with other evidence, such activity may be indicative of drug trafficking. *See State v. Hash*, 9th Dist. Medina No. 10CA0008-M, 2011-Ohio-859, ¶ 17; *United States v. Griffin*, 501 Fed.Appx. 751, 756-757 (10th Cir.2012); *United States v. Sumpter*, 669 F.2d 1215, 1222 (8th Cir.1982). One of these reports came from a citizen whose identity, phone number, and place of employment are disclosed in the

affidavit and another came from a citizen who is identified in the affidavit, but only as "Mr. Jimmy." *See State v. Hancock*, 3d Dist. Auglaize No. 2-15-17, 2016-Ohio-2671, ¶ 10 (noting that "an identified citizen informant 'may be highly reliable and therefore, a strong showing as to * * * other indicia of reliability may be unnecessary'" and that "identified citizen informants have been 'routinely credited' with greater reliability"), quoting *Maumee v. Weisner*, 87 Ohio St.3d 295, 300 (1999). Moreover, these citizen informants personally observed the vehicle traffic at 419 S. Collett. *See id.* ("[T]he courts consider 'personal observation' to be more reliable than 'a secondhand description.'"), quoting *Weisner* at 302. These reports are bolstered by an account from an anonymous source describing similar vehicle traffic. In addition, the affidavit documents a report from an anonymous citizen informant who "had just watched a drug deal happen[] in the parking lot next to 419 S. Collett" less than one week before the controlled buy. (July 26, 2018 Tr., State's Ex. 1). According to this person, "a black male exited the property and went to a vehicle that was parked in the parking lot. The male gave the driver something and then ran back into the residence. * * * He said he has seen this same thing happen several times * * *." (*Id.*).

{¶37} Finally, the affidavit details the most significant piece of corroborating information: the March 30, 2016 controlled buy. (July 26, 2018 Tr., State's Ex. 1). Once Bingham's name is redacted from paragraph 13, the affidavit reflects that the

confidential informant, a person whom Officer Brotherwood found to be "credible and reliable," drove to 419 S. Collett, knocked on the door of the residence, and purchased a substance that tested "positive for the presumptive presence of marijuana" from a person who had been inside of the residence at 419 S. Collett. (*Id.*). Therefore, the controlled buy substantiated the tip that 419 S. Collett was a hub of drug-trafficking activity.

{¶38} Contrary to Bingham's argument, when considering the totality of the information contained in the search-warrant affidavit, the identity of the person from whom the confidential informant purchased marijuana on March 30, 2016 is immaterial to the finding of probable cause. Bingham's name is mentioned only twice in the body of the affidavit: in the tip received in February 2016 and, erroneously, in paragraph 13. Bingham's name is not mentioned in any of the citizen reports. Taking the affidavit as a whole, it is clear that the true focus of the investigation was 419 S. Collett itself and the apparent drug-trafficking activities emanating from within the residence. Viewed through this lens, it is irrelevant whether Pea, Bingham, or another individual with access to 419 S. Collett sold the marijuana to the confidential informant because a sale from any person out of 419 S. Collett would have been a strong indication that 419 S. Collett was being utilized as a base for drug-trafficking operations. When considered in conjunction with the balance of the information contained in the affidavit, the bare fact that a controlled

buy was conducted out of 419 S. Collett supports a finding that there was a fair probability that drugs or evidence of drug trafficking would be discovered inside of 419 S. Collett. Therefore, the trial court did not err by concluding that the references to Bingham in paragraph 13 are unnecessary to the finding of probable cause, and accordingly, it did not err by denying Bingham's motion to suppress.

{¶39} Bingham's second assignment of error is overruled.

## Assignment of Error No. III

### The Trial Court erred by denying Mr. Bingham's Motion to Withdraw Plea.

{¶40} In his third assignment of error, Bingham argues that the trial court erred by denying his presentence motion to withdraw his no contest pleas. In particular, Bingham argues that his decision to enter his no contest pleas "was largely the result of an inability * * * to secure a subpoena for the appearance of Jeremy Calhoun [("Calhoun")] as a defense witness." (Appellant's Brief at 24). According to Bingham, Calhoun was the tenant of 419 S. Collett when the search warrant was obtained, and he was present at the home immediately before the search warrant was executed. (Id.). Bingham argues that if he had been able to secure the testimony of Calhoun at trial, "[i]t would have been reasonable for a jury to conclude that [Calhoun] * * * was the more likely possessor of drugs found in [419 S. Collett]." (Id.). Furthermore, Bingham notes that in an effort to serve Calhoun with a subpoena, he retained the services of a private investigator, Daren Johnson

("Johnson"). (*Id.*). However, Bingham later learned that Johnson "was secretly working as a Deputy Sheriff at the time." (*Id.*). Bingham contends that Johnson's involvement, which he characterizes as an "invasion of the defense team," "manifested in a failure to serve the subpoena upon Calhoun, which induced the plea." (*Id.*).

**{¶41}** Crim.R. 32.1 provides a defendant may file a presentence motion to withdraw a no contest plea. *See State v. Lopez*, 9th Dist. Lorain No. 10CA009771, 2014-Ohio-5089, ¶ 7. Generally, "presentence motion[s] to withdraw * * * [no contest] plea[s] should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527 (1992).[3] However, "[a] defendant does not have an absolute right to withdraw a [no contest] plea prior to sentencing." *Id.* at paragraph one of the syllabus. As a result, a "trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.*

**{¶42}** When reviewing a trial court's denial of a presentence motion to withdraw a no contest plea, this court considers several factors, including: (1) whether the withdrawal will prejudice the prosecution; (2) the representation afforded to the defendant by counsel; (3) the extent of the hearing held pursuant to Crim.R. 11; (4) the extent of the hearing on the motion to withdraw the plea; (5)

---

[3] Although *Xie* dealt specifically with presentence motions to withdraw guilty pleas, the holdings in *Xie* are equally applicable to presentence motions to withdraw no contest pleas. *State v. Benson*, 5th Dist. Perry No. 11CA10, 2012-Ohio-230, ¶ 8, citing *State v. Spivey*, 81 Ohio St.3d 405, 415 (1998).

whether the trial court gave full and fair consideration of the motion; (6) whether the timing of the motion was reasonable; (7) the stated reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charges. *State v. Lane*, 3d Dist. Allen No. 1-10-10, 2010-Ohio-4819, ¶ 21, citing *State v. Griffin*, 141 Ohio App.3d 551, 554 (7th Dist.2001). "None of the factors is determinative on its own and there may be numerous additional aspects 'weighed' in each case." *State v. North*, 3d Dist. Logan No. 8-14-18, 2015-Ohio-720, ¶ 16, citing *Griffin* at 554 and *State v. Fish*, 104 Ohio App.3d 236, 240 (1st Dist.1995), *overruled on other grounds*, *State v. Sims*, 1st Dist. Hamilton No. C-160856, 2017-Ohio-8379. *See State v. Zimmerman*, 10th Dist. Franklin No. 09AP-866, 2010-Ohio-4087, ¶ 13 ("Consideration of the factors is a balancing test, and no one factor is conclusive."), citing *Fish* at 240.

{¶43} Ultimately, "[t]he decision to grant or deny a presentence motion to withdraw a [no contest] plea is within the sound discretion of the trial court." *Xie* at paragraph two of the syllabus. "Therefore, appellate review of a trial court's decision to deny a presentence motion to withdraw a [no contest] plea is limited to whether the trial court abused its discretion." *State v. Keehn*, 3d Dist. Henry No. 7-14-05, 2014-Ohio-3872, ¶ 14, citing *State v. Nathan*, 99 Ohio App.3d 722, 725 (3d Dist.1995), citing *State v. Smith*, 49 Ohio St.2d 261 (1977). An abuse of discretion

is more than a mere error in judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980). "When applying this standard, a reviewing court may not simply substitute its judgment for that of the trial court." *Keehn* at ¶ 14, citing *State v. Adams*, 3d Dist. Defiance No. 4-09-16, 2009-Ohio-6863, ¶ 33.

{¶44} We begin by addressing the factors that weigh in Bingham's favor. With respect to the first and sixth factors, the trial court found that "[s]ince the motion was filed a month after the plea, * * * it was timely and the State would not be prejudiced if the plea is withdrawn." (Doc. No. 408). We agree. First, little more than one month elapsed between when Bingham entered his pleas and when he sought to withdraw his pleas. Furthermore, Bingham filed his motion to withdraw more than three weeks before his sentencing hearing was scheduled to take place. (*See* Doc. Nos. 394, 395, 399). Thus, Bingham's motion to withdraw was filed within a reasonable time. *See State v. Sow*, 10th Dist. Franklin No. 17AP-772, 2018-Ohio-4186, ¶ 28 (finding that a motion to withdraw made one and one-half months after the defendant entered his pleas was filed within a reasonable time even though it was filed only two days before the defendant's sentencing hearing).

{¶45} In addition, the record does not establish that the State would have been prejudiced had Bingham been permitted to withdraw his no contest pleas. "Prejudice will not be presumed when it is not articulated." *Zimmerman*, 2010-

Ohio-4087, at ¶ 23, citing *Griffin*, 141 Ohio App.3d at 554. Here, the State has made no effort to identify how the withdrawal of Bingham's plea would have prejudiced it. There is no suggestion in the record that the State's evidence against Bingham became unavailable or unusable during the one-month delay between Bingham's plea and the filing of his motion to withdraw. *See id.* at ¶ 24, quoting *State v. Boyd*, 10th Dist. Franklin No. 97APA12-1640, 1998 WL 733717, *6 (Oct. 22, 1998) ("Generally, [prejudice] involves one or more witnesses becoming unavailable due to the delay in the trial resulting from the plea withdrawal."). At most, allowing Bingham to withdraw his no contest pleas would have subjected the State "'only to the inconvenience of having to prosecute [the] case,'" and the State's inconvenience is not a "legitimate consideration when determining whether a defendant may withdraw his [no contest] pleas prior to sentencing." *State v. Williams*, 3d Dist. Logan No. 8-18-06, 2018-Ohio-3615, ¶ 11, quoting *Zimmerman* at ¶ 24. Therefore, because Bingham's motion to withdraw was made within a reasonable time and because the State failed to demonstrate actual, articulated prejudice, the first and sixth factors weigh in Bingham's favor.

{¶46} Yet, although the first and sixth factors weigh in Bingham's favor, we conclude that upon examining the remaining seven factors and weighing them against the first and sixth factors, the trial court did not abuse its discretion by denying Bingham's presentence motion to withdraw his no contest pleas. *See id.* at

¶ 12 (balancing all nine factors and concluding that the trial court did not abuse its discretion by denying Williams's motion to withdraw despite the fact that the first and sixth factors weighed in Williams's favor).

{¶47} Regarding the second factor, the trial court found that Bingham "was represented by the same competent attorney at the plea hearing and at the hearing on the motion to withdraw the plea. Counsel was experienced and raised appropriate issues in the motion to withdraw." (Doc. No. 408). Nothing in the record calls these findings into question. The record reflects that Bingham was represented by counsel at his change-of-plea hearing, where he helped to ensure that Bingham's pleas were knowing, voluntary, and intelligent. (*See* Oct. 26, 2018 Tr. at 23). Furthermore, Bingham was represented by the same counsel at the hearing on his motion to withdraw. (*See* Dec. 11, 2018 Tr. at 2). There, Bingham's trial counsel effectively examined Bingham and other witnesses and otherwise vigorously advocated for Bingham's stated grounds for withdrawal. Nevertheless, Bingham argues that the "representation afforded to the defendant by counsel was negatively affected by the secret status of a defense investigator as a Deputy Sheriff, creating a conflict of interest." (Appellant's Brief at 24). However, other than claiming that Johnson's involvement created an appearance of impropriety, Bingham fails to demonstrate how Johnson's previously unknown affiliation with the Allen County Sheriff's Office adversely affected the quality of his legal

representation. In fact, at the hearing on Bingham's motion to withdraw, Bingham's trial counsel acknowledged that he had "not had any indications of [Johnson] reviewing anything" with respect to Bingham's defense and that he did not "in any way believe that there was anything nefarious about what [Johnson] was doing." (Dec. 11, 2018 Tr. at 43). Thus, Bingham's trial counsel was not of the view that Johnson actually impaired Bingham's defense. Accordingly, the second factor weighs against Bingham.

{¶48} Likewise, the third and eighth factors do not weigh in Bingham's favor. Bingham argues that while "the extent of the hearing held pursuant to Crim.R. 11 was sufficient for most cases," because neither he nor the trial court were aware of Johnson's association with the Sheriff's Office, the "matter [of Johnson's associations] was not discussed," thereby rendering his Crim.R. 11 plea colloquy inadequate. (Appellant's Brief at 24). In addition, he argues that while he "understood the nature of the charges and potential sentences, the issue in this case was triability and the invasion of the defense team secretly by [Johnson]." (*Id.* at 25). Bingham's arguments are without merit. First, even if the trial court had been aware of Johnson's relationship with the Sheriff's Office, the trial court would not have been required to disclose this information during the plea colloquy because such information is not among any of the types of information that Crim.R. 11 requires trial courts to discuss with defendants prior to accepting their pleas. *See*

Crim.R. 11(C)(2)(a)-(c). Moreover, as Bingham concedes, the trial court conducted a comprehensive Crim.R. 11 plea colloquy. The trial court ensured that Bingham understood the effect of entering his no contest pleas, the nature of the charges against him, the maximum penalties the trial court could impose, and the constitutional rights he was waiving by pleading no contest. (Oct. 26, 2018 Tr. at 3-8, 14-21). The trial court also confirmed that Bingham was not intoxicated or mentally impaired at the time he entered his pleas and that he was not coerced into entering the pleas. (*Id.* at 21-22). Finally, as discussed above, Bingham's trial counsel conceded that Johnson did not meaningfully participate in conducting Bingham's defense and the record does not suggest otherwise. Therefore, because the trial court conducted a thorough Crim.R. 11 plea colloquy, which included a discussion sufficient to ensure that Bingham understood the nature of the charges against him and the potential penalties, the third and eighth factors do not weigh in Bingham's favor.

{¶49} Furthermore, we find that the fourth and fifth factors do not weigh in Bingham's favor. In response to Bingham's motion, the trial court conducted a full, separate hearing. (*See* Dec. 11, 2018 Tr. at 1). At the hearing, Bingham was able to explain fully his stated reasons for seeking to withdraw his no contest pleas, and both Bingham and the State had the opportunity to speak, present evidence, and examine witnesses. Six days after the hearing, the trial court issued a thorough

eight-page decision outlining the standards governing presentence motions to withdraw no contest pleas, applying those standards to Bingham's motion, and ultimately denying Bingham's motion after concluding that "there is no reasonable and legitimate basis for withdrawal of the plea[s]." (Doc. No. 408). Specifically, after discussing the evidence introduced at the hearing, the trial court found that the "credibility of the assertions in [Bingham's] motion to withdraw his plea[s] and his protestation of innocence are in serious question." (*Id.*). The trial court also found that Bingham's "stated reasons for wanting to withdraw his plea[s] are not believable and there is no credible basis to determine that [Bingham] was perhaps not guilty or had a complete defense to the charges." (*Id.*). Thus, the trial court conducted a comprehensive hearing on Bingham's motion, and it gave full and fair consideration to Bingham's reasons to withdraw his no contest pleas. *See Williams*, 2018-Ohio-3615, at ¶ 14. Consequently, the fourth and fifth factors weigh against Bingham.

{¶50} In addition, we find that the seventh factor, Bingham's stated reasons for seeking to withdraw his pleas, does not weigh in Bingham's favor. Bingham notes that his "plea was largely the result of an inability of the defense to secure a subpoena for the appearance of [Calhoun] as a defense witness." (Appellant's Brief at 24). He observes that after his pleas were entered, "Calhoun was found * * * and became cooperative at that point." (*Id.*). Bingham argues that although Calhoun

was then available to testify, he was "denied the withdrawal of the plea on the unreasonable basis that [his] assertion of the relevance to him of the Calhoun testimony was deemed by the Trial Court to be not credible." (*Id.* at 25).

**{¶51}** As noted by the trial court, the "determination of [Bingham's motion to withdraw] boils down to [Bingham's] self-serving contention that if Calhoun could have been subpoenaed, [Bingham] would not have entered the plea." (Doc. No. 408). The trial court ultimately found that this "stated reason[] for wanting to withdraw [the] plea[s] [is] not believable." (*Id.*). Thus, contrary to his argument, the trial court did not reject the motion to withdraw based on Bingham's belief about the relevancy of Calhoun's testimony. Instead, the trial court rejected Bingham's motion because it did not believe that Bingham was seeking to withdraw his pleas on that basis.

**{¶52}** At the hearing on the motion to withdraw, Bingham testified that he intended to call Calhoun as a witness at his trial. (Dec. 11, 2018 Tr. at 9). He also testified that it was "of great importance" to him that Calhoun be subpoenaed "because if [he] would have got [Calhoun] served then we would have had a trial already." (*Id.* at 11). Finally, Bingham contended that the failure to subpoena Calhoun "played a major factor in [his] decision to make the no contest plea." (*Id.*). Yet, aside from Bingham's testimony, the record contains little suggestion that Bingham actually believed Calhoun's testimony was crucial to his defense or that

his decision to plead no contest was induced by his failure to subpoena Calhoun. First, Calhoun was not mentioned as a potential defense witness until October 2018, nearly two and a half years after the proceedings against Bingham were initiated. (*See* Doc. No. 383). Furthermore, as the trial date approached and efforts to subpoena Calhoun continued to fail, Bingham did not request a continuance, and he did not offer a satisfactory justification for why he did not seek one. Finally, at the change of plea hearing, Bingham did not mention Calhoun or state that he was entering his no contest pleas because his efforts to subpoena Calhoun were unsuccessful.

{¶53} As the trier of fact, the trial court was in the best position to assess Bingham's credibility concerning his reasons for seeking to withdraw his pleas. After reviewing the record, we find no reason to second-guess the trial court's credibility determination, especially considering that the record is otherwise devoid of evidence suggesting that Calhoun's unavailability prompted Bingham to plead no contest. Therefore, we find that the seventh factor does not weigh in Bingham's favor.[4]

---

[4] Johnson's associations with the Allen County Sheriff's Office do not impact our treatment of the seventh factor. We agree with the trial court that "[t]he issue regarding Johnson is nothing more than a red herring." (Doc. No. 408). The record reflects that Johnson attempted dutifully to serve Calhoun with the subpoena. Although Bingham only hired Johnson to make three attempts at service, the record supports that Johnson attempted to serve Calhoun on five occasions in October 2018. (Dec. 11, 2018 Tr. at 26). Furthermore, the record establishes that Johnson conducted three hours of surveillance on a residence reportedly occupied by Calhoun in an effort to effect service of the subpoena. (*Id.* at 26-27). While Johnson's undisclosed associations with the Sheriff's Office were unfortunate, we simply do not agree with Bingham that Johnson's involvement was an "invasion of the defense team manifest[ing] in a failure to serve the subpoena upon Calhoun * * *."

{¶54} Finally, we find that the ninth factor weighs against Bingham. At the hearing on the motion to withdraw, Bingham testified that Calhoun "was actually living at [419 S. Collett] at the time of the particular raid." (Dec. 11, 2018 Tr. at 7-8). He also suggested that the room in which cocaine was located was "the room where [Calhoun] was actually presiding [sic] at." (*Id.* at 11). Bingham argues that it "would have been reasonable for a jury to conclude" that Calhoun, as "the person having superior possessory interest in [419 S. Collett]," "was the more likely possessor of drugs found in that home, considering Bingham's recent arrival to the house right before execution of the search warrant and the lack of any controlled buys from Bingham." (Appellant's Brief at 24).

{¶55} However, Calhoun's testimony at the hearing on the motion to withdraw severely impairs Bingham's claims of innocence. Calhoun testified that he was not living at 419 S. Collett on the date the search warrant was executed. (Dec. 11, 2018 Tr. at 19). While Calhoun conceded that he was still receiving mail at 419 S. Collett in April 2016, he stated that he ceased renting 419 S. Collett in December 2015, and he testified that all of his belongings were removed from the residence in February 2016. (*Id.* at 16, 19-22). Calhoun testified that he returned the keys to 419 S. Collett to Bingham in December 2015 and that he did not have keys to the residence in April 2016. (*Id.* at 22-23). Finally, Calhoun stated that the

cocaine found in 419 S. Collett was not his cocaine and that he did not know to whom the cocaine belonged. (*Id.* at 18).

**{¶56}** After considering Bingham's and Calhoun's testimony, the trial court held that there was "no credible basis" to Bingham's claims that he was innocent or had a complete defense. Our review of the record leads us to conclude that the trial court's findings with respect to the veracity of Bingham's claims of innocence are supported by competent, credible evidence. Thus, we find that the ninth factor does not weigh in Bingham's favor.

**{¶57}** In conclusion, although the first and sixth factors weigh in Bingham's favor, we find that the remaining factors weigh against Bingham. Accordingly, we conclude that the trial court's decision to deny Bingham's presentence motion to withdraw his no contest pleas was not arbitrary, unreasonable, or unconscionable. Thus, we conclude that the trial court did not abuse its discretion by denying Bingham's motion to withdraw his no contest pleas.

**{¶58}** Bingham's third assignment of error is overruled.

**{¶59}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and SHAW, J., concur.**