[Cite as *State v. Vale*, 2023-Ohio-4287.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                    :

                                               No. 22AP-537

v.                                                     :      (C.P.C. No. 20CR-580)

Christopher Raymond James Vale,        :            (REGULAR CALENDAR)

      Defendant-Appellant.                 :

---

D E C I S I O N

Rendered on November 21, 2023

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Paula M. Sawyers*, for appellee. **Argued:** *Paula M. Sawyers*.

**On brief:** *Taft Stettinius & Hollister LLP, Lizett M. Schreiber*, and *David H. Thomas*, for appellant. **Argued:** *Lizett M. Schreiber*.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Christopher Raymond James Vale, appeals a judgment entered by the Franklin County Court of Common Pleas denying his motion to withdraw his guilty plea. For the following reasons, we affirm.

{¶ 2} On January 31, 2020, appellant was indicted on 1 count of trafficking in cocaine (equal to or exceeding 100 grams) in violation of R.C. 2925.03, a first-degree felony (Count 3), 1 count of possession of cocaine (equal to or exceeding 100 grams) in violation of R.C. 2925.11, a first-degree felony (Count 4), and 1 count of aggravated possession of drugs (methamphetamine equal to or exceeding 5 times the bulk amount but less than 50 times the bulk amount) in violation of R.C. 2925.11, a second-degree felony (Count 5). Counts 3 and 4 were accompanied by 1-year firearm specifications under R.C. 2941.141(A),

major drug offender specifications under R.C. 2941.1410(A), and specifications for forfeiture of money in a drug case under R.C. 2941.1417(A). Count 5 included a 1-year firearm specification pursuant to R.C. 2941.141(A). According to the indictment, all charges arose from an incident on May 2, 2019.[1]

{¶ 3} On May 25, 2021, appellant entered a counseled guilty plea to the stipulated lesser-included offense of Count 3, trafficking in cocaine (between 27 and 100 grams) in violation of R.C. 2925.03, a first-degree felony, without the major drug offender specification but including the 1-year firearm and forfeiture specifications. Appellant also pled guilty to the stipulated lesser-included offense of Count 5, aggravated possession of drugs in violation of R.C. 2925.11, as a third-degree felony without the firearm specification. Upon recommendation of the prosecutor, through plaintiff-appellee State of Ohio, the trial court entered a nolle prosequi as to Count 4 and the remaining specifications. The parties jointly recommended a prison sentence of 5 years on the stipulated lesser-included offense of Count 3 plus a 1-year consecutive prison term on the firearm specification, and a 24-month prison term on the stipulated lesser-included offense of Count 5 to be served consecutively to the sentence imposed on Count 3, for a total aggregate indefinite prison term of 8 to 10.5 years. In addition, the parties jointly recommended the forfeiture of $1,999, and confiscation and destruction of any recovered firearms not returned to their lawful owners.

{¶ 4} At appellant's plea hearing, the prosecutor moved to amend the indictment to reflect the date of the incident as August 27, 2019 rather than May 2, 2019. Without objection from appellant, the trial court granted the motion to amend.[2]

{¶ 5} Thereafter, the prosecutor set forth the facts underlying the charges as follows:

---

[1] In the same indictment, Benjamin Lawson Conley (not an appellant in this case) was charged with trafficking in cocaine (equal to or exceeding 100 grams) in violation of R.C. 2925.03, a first-degree felony (Count 1), possession of cocaine (equal to or exceeding 100 grams) in violation of R.C. 2925.11, a first-degree felony (Count 2), trafficking in cocaine (equal to or exceeding 100 grams) in violation of R.C. 2925.03, a first-degree felony (Count 3), and possession of cocaine (equal to or exceeding 100 grams) in violation of R.C. 2925.11, a first-degree felony (Count 4). Counts 1 and 2 included major drug offender specifications under R.C. 2941.1410(A). Counts 3 and 4 included one-year firearm specifications under R.C. 2941.141(A), major drug offender specifications under R.C. 2941.1410(A), and specifications for forfeiture of money in a drug case pursuant to R.C. 2941.1417(A). As with appellant, the indictment alleged the charges stemmed from an incident on May 2, 2019.

[2] The certified record on appeal does not include a written amended indictment.

[PROSECUTOR]: * * * [T]his was an investigation that was conducted by the DEA Drug Task Force and Columbus Division of Police. It began in 2018. The police were provided information that the [appellant] was supplying a number of trap houses around central Ohio. Two of those were here in Columbus on * * * Republic Avenue and on Renwood Avenue in Columbus.

There were search warrants that were eventually executed at the Republic Avenue location. Nothing came of that. However, at that point, the police lost contact with [appellant]. It appeared [appellant] had changed up his operations. However, in 2019, he resurfaced again, and a confidential informant advised the police that he was selling narcotics again, apparently from the * * * Renwood Place [location].

[Appellant] actually resided up in Raymond, Ohio, on State Route 31, but was traveling to Columbus and other locations to supply the trap houses at this time.

The detectives were able to conduct a couple of undercover controlled buys at the Renwood location in August 2019. On August 27th, 2019, the search warrants were executed at Renwood Place as well as [appellant's] residence in Raymond, Ohio. When the detectives were conducting surveillance on August 27th, 2019, at Renwood prior to the search warrant, they observed [appellant] and two other individuals at that location. They witnessed [appellant] proceed to a car that was parked outside with one of those individuals who ended up being Mr. Conley, the co-defendant. Mr. Conley opened up the car door, got a bag out, provided that bag to [appellant]. [Appellant] opened the bag, looked in it, and both of them walked into the house and out of sight.

The police then immediately made entry in to that residence. As they were doing so, there were spotters at the rear who indicated there were two males running from the Renwood Place location. Those two males included [appellant]. Mr. Conley was apprehended.

During a search of the rear of the location, the police recovered the bag that they observed [appellant] carrying in to the house. It had a substantial amount of what appeared to be cocaine. And actually then a handgun and the $1,900 in cash was found under a lawn chair in the driveway. During a search of the residence, the police located four additional firearms.

Mr. Conley was interviewed, and he provided that he had brought the cocaine to [appellant] for sale at that location, and that he had additional cocaine at his residence. So there was a search warrant conducted at that residence that applies to Mr. Conley.

When the search warrant was executed at State Route 31 in Raymond, Ohio, detectives located approximately 26 grams of crystal meth[amphetamine] and an additional 67 firearms.

* * *

The drugs were submitted to the Columbus police crime lab for analysis, and the cocaine recovered at the Renwood Avenue address totaled 494 grams, and the methamphetamine recovered at State Route 31 totaled 24.872. The firearms were tested and determined to be operable.

And the entire drug trafficking operation took place primarily in Franklin County, Ohio, with the connection to the State Route 31 being where [appellant] resided and where he would travel from to resupply his locations here in Franklin County.

THE COURT: But the conduct in Count 5 was Raymond, Ohio?

[PROSECUTOR]: It was Raymond, Ohio, yes, Your Honor.

(May 25, 2021 Tr. at 7-10.)[3]

{¶ 6} Appellant averred he understood and accepted the statement of facts provided by the prosecutor.

{¶ 7} Following a thorough Crim.R. 11 plea colloquy, appellant entered a plea of guilty to the charges as delineated in the written entry of guilty plea. After concluding

---

[3] Following a brief discussion initiated by the trial court regarding proper venue as related to Count 5 (the methamphetamine having been recovered from appellant's property located in Raymond, Ohio, which is situated in Union County), appellant offered no objection to venue in Franklin County.

appellant's plea was entered knowingly, voluntarily, and intelligently, the trial court accepted the plea, found appellant guilty, and set sentencing for July 29, 2021.[4]

{¶ 8}   At the July 29, 2021 sentencing hearing, the trial court imposed the jointly recommended aggregate indefinite sentence of 8 to 10.5 years, notified appellant of 5 years mandatory post-release control, imposed a mandatory fine of $15,000 ($10,000 on Count 3 plus $5,000 on Count 5), ordered forfeiture of $1,999 and confiscation and destruction of firearms not otherwise returned to their lawful owners.   The trial court memorialized appellant's conviction and sentence in a judgment entry issued July 30, 2021.   Appellant did not timely appeal from his conviction and sentence.

{¶ 9}   Nearly one year after judgment and conviction, on July 13, 2022, appellant, represented by new counsel, filed a motion to withdraw his guilty plea.  Therein, appellant argued his guilty plea should be set aside to correct a manifest injustice, as "favorable evidence that is material to either guilt or punishment" had "come to light" after he was sentenced. (Mot. to Withdraw Guilty Plea at 1.)  The post-sentence evidence involved the September 28, 2021 arrest of Columbus Division of Police ("CPD") Detectives Marco Merino and John Kotchkoski on federal charges of drug trafficking and bribery.  The charges against the detectives resulted from an FBI investigation into their alleged criminal activity occurring between March and September 2021.  The detectives pled guilty to the charges in early 2022.  Appellant averred that Merino and Kotchkoski were "material witnesses" and "significantly involved in the investigation that led to [appellant's] convictions."   (Mot. to Withdraw Guilty Plea at 4, 5.)   According to appellant, the prosecution never disclosed that the detectives were under investigation by the FBI throughout the pendency of his case; rather, he discovered this information solely through media reports.

{¶ 10} Appellant asserted this evidence should have been disclosed by the prosecution pursuant to *Brady v. Maryland*, 373 U.S. 83 (1962), and failure to do so violated his due process rights under both the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.  Appellant argued all three components of a *Brady* violation had occurred in this case:

---

[4] In addition, the trial court and the state acquiesced in appellant's request to be released from jail on a reporting recognizance bond until the sentencing hearing on July 29, 2021 so he could get his affairs in order before beginning his prison sentence.

[1] [T]he fact that two of the State's lead witnesses were under investigation and eventually convicted for crimes involving manipulation of criminal investigations is favorable to [appellant] as impeaching, and potentially exculpatory[,]

[2] [T]his evidence was suppressed by the State. While this information was known to the FBI, and not necessarily the Franklin County Prosecutor's Office, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. * * * Whether this prosecutor knew of the investigation into Detectives Merino and Kotchkoski at the time of the plea and sentencing, the duty to disclose this favorable material evidence to [appellant] remains[, and]

[3] [P]rejudice has ensued. * * * The investigation into criminal behavior by law enforcement directly involved in the investigation * * * is information [appellant] should have known at the time of plea negotiations, potential trial decision, and defense strategy at trial. Detectives Merino and Kotchkoski were integral to the search at [appellant's] Raymond, Ohio home, and their lack of credibility and potential interference in [appellant's] case could be exculpatory. A guilty plea to Count Five extended [appellant's] prison sentence by two years. Because he relied on incomplete information, [appellant] has suffered prejudice by entering into a plea agreement and being sentenced to prison time he otherwise would not have received.

(Footnote omitted.) (Mot. to Withdraw Guilty Plea at 10-11.)

{¶ 11} According to appellant, "[w]ithout the information regarding the investigation into Detectives Merino and Kotchkoski, [appellant's] plea was not knowing, intelligent, or voluntary, with sufficient awareness of the relevant circumstances and likely consequences." (Mot. to Withdraw Guilty Plea at 8.) "Had this evidence been disclosed to the defense, Defense counsel's entire trial strategy and plea posture changes and the results of the proceedings would doubtless have been different." (Mot. to Withdraw Guilty Plea at 9.) Appellant requested the trial court hold an evidentiary hearing on his motion to withdraw his guilty plea.

{¶ 12} Appellant attached several exhibits to his motion. Exhibit A is the transcript of appellant's May 25, 2021 plea hearing. Exhibit B is a September 29, 2021 media release from the United States Attorney's Office for the Southern District of Ohio detailing federal bribery and drug trafficking charges brought against Merino and Kotchkoski. Specifically,

the media release reported that Merino and Kotchkoski were allegedly involved in the distribution of approximately 7.5 kilograms of fentanyl and Merino allegedly accepted $44,000 in cash to protect the safe transportation of at least 27 kilograms of cocaine in March, April, May, August, and September 2021. Merino attempted to recruit a confidential informant ("CI") to traffic drugs with him, promising law enforcement protection to the CI and averring that he would intervene if other law enforcement agencies attempted to investigate the CI. Exhibit C is a February 8, 2022 media release from The United States Attorney's Office for the Southern District of Ohio detailing Merino's guilty plea to the charges. Exhibit D is the March 23, 2022 criminal docket in the United States District Court for the Southern District of Ohio detailing Kotchkoski's guilty plea entered on April 1, 2022. Exhibit E is the prosecution's witness list in appellant's case, which includes Merino and Kotchkoski. Exhibit F is a CPD Case Report regarding the Raymond, Ohio location identifying Merino as a reporting officer (applicable to Count 5). Exhibit G is a CPD Crime Laboratory Drug Identification Report identifying two baggies of cocaine submitted by Merino on August 27, 2019 (applicable to Count 3). Exhibit H is a CPD Property Inventory Report delineating multiple firearms, ammunition, cash, and other evidence, including a red scale and 36.6 grams of "unknown substance" recovered from the Raymond, Ohio location on August 27, 2019 and turned in by Merino and Detective Richard Moore, Jr., on August 28, 2019 (applicable to Count 5). Exhibit I is a CPD Recovered Firearm Report detailing firearms recovered from the Raymond, Ohio location on August 27, 2019 by Merino and Detective Moore (applicable to Count 5) and firearms recovered by Officer Joel Mefford and Detective Moore on August 27, 2019 from the Renwood Place location (applicable to Count 3). Exhibit J is a CPD Evidence and Property Disposition Notice showing that Merino turned in two baggies of crack cocaine on August 27, 2019 (applicable to Count 3). Exhibit K includes August 27, 2019 search warrant return/inventory forms identifying Officer Mefford as executing a search warrant at the Renwood Place location (applicable to Count 3) and Detective Seth McDowell as executing a search warrant at the Raymond, Ohio location (applicable to Count 5) and a handwritten CPD Evidence Inventory list prepared by Kotchkoski on August 27, 2019, listing cash, multiple firearms, ammunition, a red scale, and 26 grams of methamphetamine recovered from the Raymond, Ohio location (applicable to Count 5).

{¶ 13} The state filed a memorandum contra on July 18, 2022. In it, the state first argued appellant's claim is barred by res judicata, as he failed to raise it on direct appeal. The state further contended appellant cannot meet the burden imposed on him in seeking post-sentence withdrawal of his guilty plea, i.e., to correct manifest injustice. To that end, the state first argued appellant failed to file his motion within a reasonable time, a factor adversely affecting his credibility and militating against the motion. Next, the state claimed appellant did not seek to correct a fundamental flaw in the plea proceedings, as he did not allege he was denied ineffective assistance of counsel, the trial court committed error during the plea hearing or the Crim.R. 11 colloquy, or that he was unaware of the various rights he was waiving by pleading guilty, the legal effect of his guilty plea, or the various consequences of his guilty plea.

{¶ 14} With regard to appellant's alleged *Brady* violation argument, the state asserted appellant failed to allege the crimes committed by Merino and/or Kotchkoski were in any way related to the investigation of appellant's case. The state further averred that, to the extent appellant wanted to use the detectives' criminal conduct for impeachment purposes, their credibility was a non-issue because his fully counseled guilty plea constituted a complete admission of guilt and appellant had no due process right under *Brady* to impeachment material prior to pleading guilty. In addition, the state disputed appellant's allegation that Merino and Kotchkoski were lead witnesses in the case against appellant, arguing that neither located or submitted for testing the cocaine or the methamphetamines which were the subject of the charges against appellant. According to the state, "the entire case, if it had gone to trial, could have been tried without the testimony of either Merino or Kotchkowski [sic], as neither of them played an important role in the case." (Memo. Contra Mot. to Withdraw Guilty Plea at 8.) Finally, the state averred that appellant "received substantial consideration from the State in exchange for his guilty plea. * * * Instead of what could have been a prison term of between fifteen to twenty years minimum, [appellant] pled to reduced charges which also included a joint recommendation of eight years in prison. By pleading guilty and entering into a joint recommendation, [appellant] limited his prison exposure." (Memo. Contra Mot. to Withdraw Guilty Plea at 6.)

{¶ 15} Appellant filed a reply on July 26, 2022. Therein, appellant argued his claim was not barred by res judicata because he was not, and could not have been, aware of the investigation into the criminal conduct of Merino and Kotchkoski until they were arrested on September 28, 2021 and admitted guilt in early 2022, which was past the 30-day deadline for filing a direct appeal from the July 29, 2021 sentencing entry.

{¶ 16} Appellant also challenged the state's argument regarding his failure to allege a fundamental flaw in the plea proceedings. Appellant reiterated his position that his plea was not knowing, voluntary, and intelligent because it was entered without knowledge of material evidence (the investigation, arrest, and convictions of Merino and Kotchkoski) withheld by the state; as such, he was never provided the opportunity to investigate the depth and nature of their misconduct as it related to his case.

{¶ 17} Appellant also disputed the state's contention that no *Brady* violation occurred because the investigation into the criminal conduct of Merino and Kotchkoski constituted only impeachment evidence that was not required to be disclosed prior to entry of appellant's guilty plea. Appellant maintained that the newly discovered evidence about Merino and Kotchkoski was more than just impeachment evidence; it constituted potentially exculpatory evidence regarding the detectives' handling of evidence and preparation of reports in his case.

{¶ 18} On August 9, 2022, the same trial court judge who accepted appellant's guilty plea denied appellant's motion without holding a hearing. The trial court concluded:

> Because the former detectives were charged by federal authorities not state authorities, and because there has been no suggestion state authorities knew they were breaking the law – or obviously they would not have been retained on duty as detectives – and because [appellant's] pleas were carefully negotiated and documented in a 36-page colloquy under Crim.R. 11, and because [appellant] received a number of benefits in connection with his pleas, the court has no basis to find a "manifest injustice" as required by Crim.R. 32.1.

(Entry Denying Motion to Vacate Guilty Pleas Post-Sentence at 2.)

## II. Assignments of Error

{¶ 19} Appellant appeals and assigns the following two assignments of error for our review:

[I.] The trial court erred and thereby deprived Appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by determining Appellant did not suffer a *Brady* violation.

[II.] The trial court erred and thereby deprived Appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by denying Appellant's motion to withdraw his guilty plea and finding no manifest injustice where evidence was presented that the state withheld and concealed exculpatory *Brady* material.

## III. Analysis

{¶ 20} Appellant's assignments of error are interrelated and thus will be considered together. In them, appellant contends the trial court erred by denying his post-sentence motion to withdraw his guilty plea on a finding that no manifest injustice occurred. Appellant maintains he presented evidence that the state withheld and concealed exculpatory evidence in violation of its obligations under *Brady*.

{¶ 21} "Motions to withdraw guilty pleas are governed by Crim.R. 32.1, which provides that the motion 'may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.' " *State v. Spivakov*, 10th Dist. No. 13AP-32, 2013-Ohio-3343, ¶ 9, quoting Crim.R. 32.1. Here, the motion to withdraw was made after sentence; thus, the issue to be resolved is whether granting the motion is necessary to correct a manifest injustice. *Id.*

{¶ 22} "Manifest injustice relates to some fundamental flaw in the proceedings which results in a miscarriage of justice or is inconsistent with the demands of due process." *Id.* at ¶ 10, citing *State v. Williams*, 10th Dist. No. 03AP-1214, 2004-Ohio-6123, ¶ 5. "A showing of manifest injustice 'is an extremely high standard, which permits a defendant to withdraw his guilty plea only in extraordinary cases.' " *State v. Tabor*, 10th Dist. No. 08AP-1066, 2009-Ohio-2657, ¶ 6, quoting *State v. Price*, 4th Dist. No. 07CA47, 2008-Ohio-3583, ¶ 11. "A defendant seeking to withdraw a post-sentence guilty plea bears the burden of establishing a manifest injustice based on specific facts either contained in the record or

supplied through affidavits attached to the motion." *Spivakov* at ¶ 10, citing *State v. Barrett*, 10th Dist. No. 11AP-375, 2011-Ohio-4986, ¶ 8.

{¶ 23} "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph two of the syllabus. "An appellate court reviews a trial court's decision on a motion to withdraw a plea under an abuse-of-discretion standard." *State v. Straley*, 159 Ohio St.3d 82, 2019-Ohio-5206, ¶ 15, citing *Smith* at paragraph two of the syllabus. "Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, ¶ 34, citing *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶ 24} Appellant pled guilty to the offenses at issue here, which limits the claims he may bring. As the United States Supreme Court explained in *Tollett v. Henderson*, 411 U.S. 258 (1973), "a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* at 267.

{¶ 25} However, "[a] guilty plea that was not entered knowingly, intelligently, or voluntarily, creates a manifest injustice that would entitle a defendant to withdraw a guilty plea." *Williams*, 2004-Ohio-6123, ¶ 5, citing *State v. Bush*, 3d Dist. No. 14-2000-44, 2002-Ohio-6146, ¶ 11; *Spivakov* at ¶ 14 (manifest injustice occurs when a plea is not knowing, voluntary, and intelligent). Other Ohio appellate courts have held similarly. *See, e.g., State v. Jones*, 4th Dist. No. 19CA9, 2020-Ohio-7037, ¶ 21, quoting *State v. Hall*, 4th Dist. No. 99CA847 (Feb. 25, 2000) (" '[a] trial court violates a defendant's due process rights, and hence may produce a manifest injustice, if it accepts a guilty plea that the defendant did not enter knowingly, intelligently, and voluntarily' "), and *State v. Pishner*, 11th Dist. No. 2021-P-0063, 2022-Ohio-2099, ¶ 18, quoting *State v. Norris*, 8th Dist. No. 107894, 2019-Ohio-3768, ¶ 30 (" 'if a defendant shows that he or she did not enter a plea knowingly, intelligently

or voluntarily, the defendant may establish a manifest injustice sufficient to warrant withdrawal of the guilty plea under Crim.R. 32.1' ").

{¶ 26} Appellant asserts he did not knowingly, intelligently, and voluntarily enter his guilty plea due to the state's failure to disclose allegedly favorable and material exculpatory evidence in violation of its obligations under *Brady*. Thus, argues appellant, a manifest injustice has occurred warranting withdrawal of his guilty plea.

{¶ 27} In *Brady,* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. To establish a *Brady* violation, a defendant must demonstrate that: (1) the prosecution failed to disclose evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 19, citing *State v. Crawford*, 10th Dist. No. 08AP-1055, 2009-Ohio-4649, ¶ 23, citing *State v. Jones*, 11th Dist. No. 2000-A-0083 (Apr. 26, 2002). The United States Supreme Court has further held that the duty to disclose *Brady* evidence "encompasses impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280 (1999); *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, ¶ 19, citing *Strickler* ("The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."). The accused bears the burden of proving a *Brady* violation rising to the level of denial of due process. *State v. Norman*, 10th Dist. No. 12AP-505, 2013-Ohio-1908, ¶ 56, citing *State v. Iacona*, 93 Ohio St.3d 83, 92 (2001), citing *State v. Jackson*, 57 Ohio St.3d 29, 33 (1991).

{¶ 28} The *Brady* doctrine has been extended such that "[p]rosecutors have 'a duty to learn of any favorable evidence known to *the others acting on the government's behalf in the case*, including the police.' " (Emphasis sic.) *State v. Sanders*, 92 Ohio St.3d 245, 261 (2001), quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). "The *Brady* obligation thus extends to information held by state or local agencies involved in the investigation or prosecution at issue." *Id*., citing *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir.1996).

{¶ 29} Appellant maintains the trial court erred in determining that no *Brady* violation occurred because there was no suggestion that the prosecution knew of the

criminal activities of Merino and Kotchkoski. According to appellant, those criminal activities (of which Merino and Kotchkoski were obviously aware, having committed them), should be imputed to the prosecution, as both detectives "were investigative detectives in Appellant's case, and handled and documented several pieces of evidence used to indict Appellant." (Appellant's Brief at 4.) Appellant avers that imputation is particularly important in his case, given that both the federal case involving Merino and Kotchkoski and his case involve drug trafficking.

{¶ 30} Assuming arguendo that appellant is correct as to imputation, in order to invoke a right to disclosure, a defendant must make a preliminary showing that the disputed evidence actually was material evidence. *Sanders* at 261, citing *United States v. Brooks*, 966 F.2d 1500, 1503-04 (C.A.D.C.1992). "Evidence is considered material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, ¶ 23, quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985). " 'The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.' " *Jackson* at 33, quoting *United States v. Agurs*, 427 U.S. 97, 109-10 (1976).

{¶ 31} Appellant argues the trial court erred by rejecting his *Brady* claim on grounds the evidence at issue was impeachment evidence.[5] The state argues appellant had no right

---

[5] As noted supra at ¶ 27, the United States Supreme Court and the Supreme Court of Ohio have held that *Brady* encompasses both impeachment and exculpatory evidence.

to the disclosure of impeachment evidence prior to entering into a plea agreement.[6] However, this court need not resolve whether the evidence before it is impeachment or

---

[6] In *United States v. Ruiz*, 536 U.S. 622 (2002), the issue before the United States Supreme Court was whether the Constitution requires federal prosecutors, before entering into a binding plea agreement with a criminal defendant, to disclose "impeachment information relating to any informants or other witnesses." *Id.* at 625. The proposed plea agreement offered by the prosecutors was commonly known as a "fast track" plea bargain, which asked a defendant to waive indictment, trial, and an appeal in exchange for the prosecutors' recommendation to the sentencing judge of a two-level downward departure from the otherwise applicable federal sentencing guidelines. *Id.* The proposed agreement required the defendant to expressly waive the right to review impeachment information, while specifying that "any [known] information establishing the factual innocence of the defendant" "has been turned over to the defendant" and acknowledged the government's "continuing duty to provide such information." *Id.* Concluding that the Constitution does not require the preguilty plea disclosure of impeachment evidence, the court first noted that a defendant who pleads guilty forgoes not only a fair trial but also other accompanying constitutional guarantees. *Id.* at 628-29. The court further noted that "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary*," and that the "Constitution does not require the prosecutor to share all useful information with the defendant." (Emphasis sic.) *Id.* at 629. The court explained that impeachment evidence differs from exculpatory evidence in that it is not "critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant." *Id.* at 630. The court also noted that "a constitutional obligation to provide impeachment information during plea bargaining, prior to entry of a guilty plea, could seriously interfere with the Government's interest in securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice." *Id.* at 631. Based on these considerations, the court concluded that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* at 633.

The Ohio Supreme Court followed *Ruiz* in *Ketterer* at ¶ 34-35 (*Ruiz* supports the state's argument that disclosure of impeachment evidence was rendered unnecessary by the defendant's guilty plea) and *Disciplinary Counsel v. Kellogg-Martin*, 124 Ohio St.3d 415, 2010-Ohio-282, ¶ 29 ("*Ruiz* plainly holds that the state is not required to disclose impeachment evidence to a defendant before the defendant pleads guilty."). Ohio appellate courts have similarly applied *Ruiz* in finding that the state is not required to disclose impeachment evidence to a defendant during plea negotiations. *State v. Ingram*, 5th Dist. No. 2003CA00098, 2003-Ohio-5633, ¶ 18-19; *State v. Williams*, 12th Dist. No. CA2020-04-26, 2020-Ohio-5398, ¶ 24; *State v. Riley*, 4th Dist. No. 16CA29, 2017-Ohio-5819, ¶ 25; *State v. Kimpel*, 3d Dist. No. 17-17-12, 2018-Ohio-2246, ¶ 20. Appellant does not direct this court to any legal authority from this district specifically addressing *Ruiz*, and our own independent research has not revealed any Tenth District cases applying or even discussing *Ruiz*. Accordingly, pursuant to *Ruiz* and the Ohio Supreme Court's holdings in *Ketterer* and *Kellogg-Martin*, appellant's contention that the prosecution's failure to disclose impeachment evidence prior to entering into the plea agreement with appellant is without merit.

exculpatory and need not resolve whether *Brady* requires the prosecution to disclose exculpatory evidence prior to entering into a guilty plea with a criminal defendant. This is so because appellant has not established that the evidence at issue was material.

{¶ 32} In *State v. Norman*, 10th Dist. No. 12AP-505, 2013-Ohio-1908, a police officer testified on cross-examination that he and several officers responded to the scene of the defendant's crime. Norman later moved for a mistrial, arguing the state had not provided the names of the additional officers. The prosecutor indicated she was unaware of the existence of those witnesses and was not going to call them to testify. The trial court denied the motion for mistrial.

{¶ 33} On appeal, Norman argued the trial court abused its discretion in denying his motion for mistrial based on the state's failure to disclose witnesses as required by Crim.R.

---

However, we note the *Ruiz* court did not specifically address whether *Brady* requires disclosure of exculpatory evidence prior to entering into a plea agreement with a criminal defendant. Appellant has not provided this court with any definitive legal authority on this issue. Furthermore, our independent research has revealed a split of opinion among federal courts. For example, in *United States v. Conroy*, 567 F.3d 174 (5th Cir.2009), the court determined that a guilty plea precludes a defendant from asserting a *Brady* violation based on failure to disclose exculpatory evidence. *Conroy* at 179. The court rejected the defendant's argument that the limitation of the *Ruiz* court's discussion to impeachment evidence implied that exculpatory evidence is different and must be turned over before entry of a guilty plea. The court stated that "*Ruiz* never makes such a distinction nor can this proposition be implied from its discussion." *Id*. By contrast, in *United States v. Ohiri*, 133 Fed.Appx. 555 (10th Cir.2005), the court distinguished *Ruiz* and held that a defendant could assert a *Brady* violation based on failure to disclose exculpatory evidence. The court first noted that the evidence withheld by the prosecution in the case before it was alleged to be exculpatory, and not just impeachment evidence. *Id*. at 562. The court further noted that the defendant's plea agreement was not a "fast track" plea entered before indictment. *Id*. The court found that "[b]y holding in *Ruiz* that the government committed no due process violation by requiring a defendant to waive the right to impeachment evidence before indictment in order to accept a fast-track plea, the Supreme Court did not imply that the government may avoid the consequence of a *Brady* violation if the defendant accepts an eleventh-hour plea agreement while ignorant of withheld exculpatory evidence in the government's possession." *Id*.

In *United States v. Ware*, E.D.Ky. No. 3:13-CR-26-GFVT-REW-1 (July 26, 2016), fn. 6, the court found "any possible distinction, as to *Ruiz*, between impeachment and exculpatory evidence problematic for several reasons. On the law, the constitutional disclosure underpinning blankets exculpatory evidence, of which impeachment evidence is really a defined subset. *See United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3379-80, 87 L.Ed.2d 481 (1985) (discussing *Brady*'s due process origin and remarking: 'In the present case, the prosecutor failed to disclose evidence that the defense might have used to impeach the Government's witnesses by showing bias or interest. Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule.'" In a subsequent footnote, the *Ware* court reiterated that "[s]everal courts have treated *Ruiz* as covering all *Brady* evidence." *Id*. at fn. 7, citing *Witherspoon v. Prelesnik*, E.D.Mich. No. 13-CV-13295 (July 31, 2015) (stating that "[s]everal courts have concluded that there is no clearly established federal Constitutional right to the disclosure of Brady material prior to the entry of a guilty plea, without regard to whether the material is exculpatory or impeachment evidence"). In *Robertson v. Lucas*, 753 F.3d 606 (6th Cir.2014), in the context of a qualified immunity defense, the Sixth Circuit held that there was "no clearly established obligation to disclose exculpatory *Brady* material * * * in time to be put to effective use in plea bargaining." *Id*. at 621-22.

16. Analyzing the argument pursuant to *Brady* and its progeny, this court determined that Norman failed to demonstrate the alleged witnesses possessed evidence that was either favorable to him or material. Specifically, citing *Jackson* at 29, this court held that Norman's assertion that these officers "were *potentially* exculpatory witnesses" because they "*possibly* may have rebutted" some of the testifying officer's testimony about what happened at the scene did not establish "materiality" in the constitutional sense. (Emphasis sic.) *Norman* at ¶ 57.

{¶ 34} In the present case, in his motion to withdraw his guilty plea, appellant stated only that information pertaining to the criminal activities of Merino and Kotchkoski was "*potentially* exculpatory" and "*could be* exculpatory." (Emphasis added.) (Mot. to Withdraw Guilty Plea at 10, 11.) In his reply to the state's memorandum contra, appellant stated that the evidence about Merino's and Kotchkoski's criminal conduct constituted "*potentially* exculpatory" evidence regarding the detectives' handling of evidence and preparation of reports in his case. (Emphasis added.) (Reply at 6.) Appellant continues this thread in his appellate brief, describing the information about Merino and Kotchkoski as "*potentially* exculpatory." (Emphasis added.) (Appellant's Brief at 11.) In addition, although appellant argues "[i]f appellant had known of the detectives' illegal actions and evidence had been disclosed, there is a reasonable possibility the result of the proceeding would have been different * * * or that * * * the state would have resolved the case with a lower prison sentence," in the same paragraph, appellant states "[q]uestioning [d]etectives Merino and Kotchkoski and the other investigating officers to determine the *possibility* of tampering by [d]etectives Merino and Kotchkoski, has *potential* for different outcome had Appellant pursued a trial." (Emphasis added.) (Appellant's Brief at 11-12.) Under *Norman,* appellant's assertions regarding "*potentially*" exculpatory evidence does not establish "materiality" in the constitutional sense.

{¶ 35} Moreover, appellant's claim that Merino's and Kotchkoski's criminal conduct is material is merely speculative and, without more, is insufficient to support a *Brady* violation. "A *Brady* violation may not rest upon a claim that is 'purely speculative.' " *State v. Moore*, 10th Dist. No. 11AP-1116, 2013-Ohio-3365, ¶ 43, quoting *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, ¶ 60. According to the media reports attached to appellant's motion to withdraw his guilty plea, the federal investigation into Merino and Kotchkoski

involved criminal conduct occurring between March and September 2021, which was two years after the 2018-19 investigation into appellant's case. Appellant acknowledges that "the dates of offense for Merino and Kotchkoski are in 2021," but theorizes that the detectives "[would] have been under investigation prior to that time frame to justify the use of confidential informants and sting operations" and that "[t]here is conceivably an overlap in time where the detectives were engaging in illegal activity" while investigating appellant's case. (Appellant's Brief at 11.) Appellant also hypothesizes about the possibility that the detectives tampered with the evidence in his case while conducting their investigative duties. Appellant does not direct this court to any record evidence substantiating these theories. Appellant's speculative claims, without more, are insufficient to establish a *Brady* violation.

{¶ 36} As a final matter, we acknowledge the value of deterring police misconduct in the interests of judicial integrity and public trust. However, after thorough review of the record in this case, we conclude the trial court did not abuse its discretion by denying appellant's post-sentence motion to withdraw his guilty plea, as appellant has failed to establish a manifest injustice warranting withdrawal of the plea. As a result, appellant's first and second assignments of error lack merit.

{¶ 37} Accordingly, appellant's two assignments of error are overruled.

## IV. Conclusion

{¶ 38} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT, P.J., and JAMISON, J., concur.

_____