[Cite as *State v. Bingham*, 2024-Ohio-2861.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 1-23-29

v.

LEONARD BINGHAM, JR.,

    O P I N I O N

    DEFENDANT-APPELLANT.

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 1-23-30

v.

LEONARD BINGHAM, JR.,

    O P I N I O N

    DEFENDANT-APPELLANT.

Appeals from Allen County Common Pleas Court
Trial Court No. CR 2016 0142

Judgments Affirmed

Date of Decision:  July 29, 2024

APPEARANCES:

    *Brian A. Smith* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**MILLER, J.**

{**¶1**} Defendant-Appellant, Leonard Bingham, Jr. ("Bingham"), appeals the April 26, 2023 judgment entry denying his motion for leave to file a delayed motion for a new trial (appellate case number 1-23-29) and the April 26, 2023 judgment entry denying his post-conviction motion to withdraw his no-contest plea (appellate case number 1-23-30), both issued by the Allen County Court of Common Pleas. Prior to briefing, this court consolidated the two appeals cases.

{**¶2**} According to Bingham, he found new evidence that would have caused him to go to trial—and not enter a no-contest plea to charges against him—had he known about that evidence. We find that the trial court did not abuse its discretion in denying his motions and affirm the judgments.

**I.      FACTS AND PROCEDURAL HISTORY**

**A.      Underlying Charges and Sentencing**

{**¶3**} This case has a lengthy history, particularly with post-conviction appeals and petitions.[1]  We previously provided the following background for the case in Bingham's direct appeal following his sentencing:

> In February 2016, the Lima Police Department became aware of potential drug activity taking place at 419 South Collett Street ("419 S. Collett") in Lima, Ohio—a residence that was then owned by

---

[1] *See, e.g., State v. Bingham*, 2019-Ohio-3324 (3d Dist.); *Bingham v. Haviland*, 2023 WL 5920173 (N.D. Ohio June 13, 2023); *Bingham v. Haviland*, 2023 WL 6385656 (N.D. Ohio Aug. 1, 2023); *Bingham v. Haviland*, 2023 WL 5198503 (N.D. Ohio Aug. 14, 2023); *Bingham v. Haviland*, 2023 WL 6383684 (N.D. Ohio Sept. 29, 2023).

Bingham. Over the following one and one-half months, law enforcement officers received numerous reports documenting activity at 419 S. Collett that was consistent with drug trafficking, including the observation of what witnesses believed to be drug transactions in a parking lot adjacent to the residence. On March 30, 2016, law enforcement officers, with the participation of a confidential informant, conducted a controlled buy of marijuana from 419 S. Collett. Based on this controlled buy and the collection of citizen reports, law enforcement officers subsequently obtained a warrant to search the residence, which was executed on the evening of April 1, 2016. During the course of the search, officers discovered a firearm and a small quantity of crack cocaine concealed within a shoebox that Bingham was seen carrying into the residence. Furthermore, the search uncovered a gallon-size freezer bag full of marijuana, other, smaller quantities of marijuana and cocaine, and materials evidently used to manufacture crack cocaine.

*State v. Bingham*, 2019-Ohio-3324, ¶ 2 (3d Dist.).

**{¶4}** On May 12, 2016, Bingham was indicted on four counts: possession of cocaine; illegal manufacture of drugs; having weapons while under disability; and possession of marijuana. *Id.* at ¶ 3. He filed three motions to suppress evidence, one of which suggested that the affidavit used to obtain the search warrant for his residence (419 South Collett Street) contained materially false or misleading statements by Officer Dustin Brotherwood ("Brotherwood"). The essence of the motions was that Brotherwood wrote in his affidavit that Bingham sold the marijuana in the March 30, 2016 controlled buy, when in fact, a person named Joel Pea ("Pea") made the sale. *Id.* at ¶ 4-6, 15, 22-23, 29. The trial court held hearings on the motions to suppress, and it denied each one. *Id.* Under a negotiated plea agreement, Bingham withdrew his previous not guilty pleas and entered pleas of no

contest to the counts in the indictment. *Id.* at ¶ 8. The trial court subsequently sentenced him to an aggregate term of 12 years' imprisonment. *Id.* at ¶ 10.

### B. Bingham's Prior Appeal

{¶5} In his prior appeal to this court, Bingham argued "that the affidavit relied on to secure the search warrant for 419 S. Collett contained materially false information [in three of its paragraphs] and omitted critical information [from one of those three paragraphs] that would have affected the issuing judge's probable cause determination." *Bingham*, 2019-Ohio-3324, at ¶ 15, 22 (3d Dist.). Thus, according to Bingham at the time, the trial court erred by denying his motion to suppress that had sought to exclude evidence obtained as a result of the flawed search warrant. *Id.* at ¶ 15, 40.

{¶6} Brotherwood was the search-warrant affiant. *Id.* at ¶ 29. We explained that Brotherwood, Bingham, Pea, and the confidential informant who had performed the controlled drug transaction at 419 S. Collett all testified at the hearing on Bingham's motion to suppress. *Id.* at ¶ 26-29. The confidential informant testified that he had driven to 419 S. Collett; "it was his understanding that he could purchase drugs from any number of persons present at the house"; upon arriving there he called Pea out to the backyard, where Pea then sold him drugs; and he subsequently met with law enforcement officers, gave them the drugs he had just purchased, and informed them that the drugs had been purchased from Pea. *Id.* at ¶ 27.

**{¶7}** For the sake of deciding the issue on appeal, we afforded Bingham the assumption that the reference to Bingham selling the illegal drugs in the challenged paragraphs in Brotherwood's search-warrant affidavit was "included by [Brotherwood] with reckless disregard for the truth of the statements." *Id.* at ¶ 22, 24. Yet we still concluded that, "even when Bingham's name is removed * * *, the affidavit contains sufficient information from which a magistrate could conclude that there was a fair probability that drugs or evidence of drug trafficking would be discovered inside of 419 S. Collett." *Id.* at ¶ 34. We explained that a report about "high-volume, short-term traffic centered around 419 S. Collett" came from "a citizen whose identity, phone number, and place of employment [were] disclosed in the affidavit and another came from a citizen who is identified in the affidavit." *Id.* at ¶ 36. And, "the controlled buy substantiated the tip that 419 S. Collett was a hub of drug-trafficking activity." *Id.* at ¶ 37. In other words, "a sale from any person out of 419 S. Collett would have been a strong indication that 419 S. Collett was being utilized as a base for drug-trafficking operations." *Id.* at ¶ 38.

**{¶8}** Thus, we held that the trial court did not err by concluding that references to Bingham in the challenged paragraphs of Brotherwood's search-warrant affidavit were unnecessary to find probable cause to search Bingham's property at 419 S. Collett. *Id.* We affirmed the trial court's judgment not to suppress the evidence seized from Bingham's property. *Id.* at ¶ 1, 38. This included

overruling assignments of error concerning the denial of Bingham's motions to suppress and as well as a pre-sentence motion to withdraw his plea.

### C.     Bingham's March 2023 Motions

{¶9} More than four years after his no-contest plea, Bingham filed a Motion to Withdraw Plea Pursuant to Ohio Crim.R. 32.1 on March 10, 2023.   Five days later, on March 15, 2023, Bingham filed a Crim.R. 33(B) Motion Asking for Leave to File a Delayed Motion for New Trial.  Both motions were filed pro se.

{¶10} In the Motion to Withdraw Plea, Bingham asserted that he had "newly found evidence," which he attached to the motion.  The alleged "newly found evidence" consisted of eleven unauthenticated pages of what appear to be documents from Brotherwood's personnel file with the Lima Police Department (the "Brotherwood Disciplinary Documents").  Although Bingham indicated in the body of the motion he "was without full knowledge of Detective Brotherwood's prior record of misconduct" at the time of his plea, Bingham never stated when or how he came into possession of the Brotherwood Disciplinary Documents.  He simply indicated they were "newly found evidence," "[a] diligent search did in fact occur and the newly presented evidence was uncovered," and "the newly presented evidence has been found since the trial."  However, there never was a trial, and the motion did not attach any affidavit, whether concerning the documents or any of his factual assertions.

{¶11} The Brotherwood Disciplinary Documents appear to show a number of infractions committed by Brotherwood over the course of nearly a decade, between 2009 and 2018. They include, for example: hitting a post in an alleyway while driving his police cruiser; losing the keys to a department vehicle; one instance of failing to have his body microphone activated during a pat-down; and one instance of failing to keep his police cruiser's video recording system on during the full course of his shift. They also included documentation related to Bingham's allegations concerning Brotherwood's search-warrant affidavit, referenced above. The disciplinary documentation indicates that Brotherwood explained he forgot to change the name in the affidavit's paragraphs at issue from Bingham to Pea.

{¶12} In the Motion for Leave, Bingham asked for leave to file a delayed motion for a new trial, pursuant to Crim.R. 33(B), based on the alleged newly-discovered evidence. As he did in the Motion to Withdraw Plea, Bingham asserted that the State had willfully or inadvertently suppressed the Brotherwood Disciplinary Documents, resulting in a *Brady* violation.

{¶13} The trial court denied both motions. In its order denying the Motion to Withdraw Plea, the trial court stated, in part:

> Defendant claims new evidence concerning Investigator Brotherwood has come to light, necessitating allowing defendant to withdraw his plea. The record shows that the issues of Brotherwood[']s credibility and misstatements in the search warrant affidavit have been addressed several times in previous motions to withdraw or motions for post-conviction relief. Defendant has alleged nothing new.

-7-

> Defendant's claims are barred by res judicata. The issues raised by defendant could have been raised in a direct appeal. . . .

> Even if the doctrine of res judicata does not bar defendant's claims, defendant has not established a manifest injustice in this case. . . .

(Apr. 26, 2023 Judgment Entry Denying Post-Conviction Motion to Withdraw Plea). This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶14} Bingham raises two assignments of error for our review:

### First Assignment of Error

**Whether the trial court's decision denying Appellant's Motion to Withdraw Plea was an abuse of discretion, and a violation of Appellant's right to Due Process under the United States and Ohio Constitutions, where the trial court improperly determined that Appellant's Motion to Withdraw Plea was barred by res judicata and that Appellant failed to present new evidence not previously introduced into the record, and where Appellant established grounds to withdraw his no contest plea under the "manifest injustice" standard set forth in Crim.R. 32.1.**

### Second Assignment of Error

**Whether the trial court's decision denying Appellant's Motion to Withdraw Plea was a violation of Appellant's right to Due Process under the United States and Ohio Constitutions, where the trial court denied Appellant's Motion to Withdraw Plea claiming it was barred by res judicata, without first conducting a hearing to determine whether Appellant had established the "manifest injustice" under Crim.R. 32.1 required to withdraw his no contest plea.**

## III. DISCUSSION

{¶15} For the reasons explained below, we overrule Bingham's assignments of error. Initially, we note that Bingham's assignments of error lead us to make a litany of assumptions. These include: the documents attached to the Motion to

Withdraw Plea were authentic[2]; Bingham recently discovered their existence; Brotherwood would have been called as a witness at trial; the documents would have been admissible at trial (including that they were relevant and not improper character evidence); and Bingham's claims could not have been raised on direct appeal, *i.e.*, they were not barred by res judicata. Bingham generally ignores the trial court's determination that, even if res judicata did not apply, Bingham did not establish "manifest injustice," as required under Crim.R. 32.1.

{¶16} A law enforcement officer's personnel files are not routinely discoverable under Crim.R. 16. *E.g., State v. Jones*, 2013-Ohio-815, ¶ 32 (8th Dist.) ("the personnel files of law enforcement officials should be protected against 'fishing expeditions' and [this court] has denied requests for discovery of personnel files where a defendant has failed to articulate a specific reason for seeking information contained in officers' personnel files or has failed to demonstrate that information sought from such files would be admissible at trial"); *State v. Widmer*, 2013-Ohio-62, ¶ 96 (12th Dist.) (in the context of *Brady*, it is one thing to require prosecutors to inquire into whether the police have discovered exculpatory or impeachment evidence during the course of their investigation, while it is quite another to require them to conduct disciplinary inquiries into the general conduct of every officer working the case).

---

[2] *See State v. Vale*, 2023-Ohio-4287, ¶ 22 (10th Dist.) (a defendant seeking to withdraw a plea post-sentence bears the burden of establishing a manifest injustice based on specific facts either contained in the record or supplied through affidavits attached to the motion).

### A. First Assignment of Error

{¶17} In the first assignment of error, Bingham submits that his appeal "centers on newly-discovered evidence relating to Brotherwood." (Appellant's Brief at 5). According to Bingham, he would have proceeded to trial and not entered the no-contest plea if he had received, or known about, the Brotherwood Disciplinary Documents.

{¶18} Bingham raises two alleged bases for establishing the "manifest injustice" that would entitle him to withdraw his no-contest plea. Both stem from not being made aware of the Brotherwood Disciplinary Documents. First, he argues that the alleged newly-discovered evidence "established a *Brady* violation." (*Id.* at 13). Second, he argues that the State's alleged failure to disclose the Brotherwood Disciplinary Documents was a violation of Crim.R. 16.

#### 1. Applicable Law

{¶19} "An appellate court reviews a trial court's decision on a motion to withdraw a plea under an abuse-of-discretion standard." *State v. Straley*, 2019-Ohio-5206, ¶ 15. An abuse of discretion occurs when the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶20} A post-sentence motion to withdraw a plea is distinguishable from a post-conviction petition. *State v. Bush*, 2002-Ohio-3993, ¶ 11, 14. A trial court may grant a defendant's post-sentence motion to withdraw a no-contest plea only

"to correct manifest injustice." Crim.R. 32.1. Such a motion will be granted only in extraordinary cases. *Straley* at ¶ 14. The defendant bears the burden of establishing the existence of "manifest injustice," which is a clear or openly unjust act. *Id.*

{¶21} Additionally, res judicata generally bars a defendant from raising claims in a Crim.R. 32.1 post-sentencing motion to withdraw a plea if those claims were or could have been raised on direct appeal. *Id.* at ¶ 15. However, there is an exception to the res judicata bar "when the defendant raises claims that were not available on appeal because they are based on evidence outside the record." *State v. Cartlidge*, 2021-Ohio-3787, ¶ 9 (3d Dist.). "To overcome the res judicata bar, the defendant must provide new evidence that was not part of the original record." *Id.* (affirming denial of the motion to withdraw plea because the alleged "new evidence" was available in the trial court record). Bingham points out that the Brotherwood Disciplinary Documents were not previously made part of the record, and, therefore, were not barred by res judicata. We do not need to determine whether his claims are barred by res judicata in order to decide this appeal.

### 2. Analysis

{¶22} We address Bingham's two asserted bases for establishing the existence of "manifest injustice."

### i.    Alleged violation of *Brady*

**{¶23}** In *Brady*, the U.S. Supreme Court "held 'that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Strickler v. Greene*, 527 U.S. 263, 280 (1999), quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The duty to disclose such evidence was later extended to "encompass[] impeachment evidence as well as exculpatory evidence" and to apply even when "there has been no request by the accused." *Id.* The holding applies not only to evidence known to the prosecutor, but also to evidence known only to police investigators, thus imposing on the prosecutor a "'duty to learn of any favorable evidence known to the others acting on the government's behalf in [the] case.'" *Id.* at 280-281, quoting *Kyles v. Whitley*, 514 U.S. 419, 437-438 (1995).

**{¶24}** A *Brady* violation has three components. *State v. Bethel*, 2022-Ohio-783, ¶ 19, citing *Strickler* at 281-282. First, the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching. *Id*. Second, that evidence must have been suppressed by the State, either willfully or inadvertently. *Id*. Third, prejudice must have occurred as a result, which involves determining whether the defendant has established that the evidence was "material." *Id.*; *Strickler* at 280, 282.

{¶25} Favorable evidence is "material" if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense. *Bethel* at ¶ 19; *Kyles* at 433. A different result is reasonably probable when the government's evidentiary suppression "undermine[s] confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). However, the defendant is not required to show that disclosure of the evidence would have resulted in his acquittal or that, after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been sufficient evidence left to convict. *Bethel* at ¶ 32. Instead, the defendant must prove that, in the context of the entire record, suppression of the undisclosed evidence undermines confidence in the outcome of the proceeding. *Id.* at ¶ 32, 34 (suppressed evidence must be considered collectively, not item by item, and materiality of suppressed evidence must be viewed in the context of the entire record).

{¶26} Bingham argues that "Brotherwood's prior disciplinary history, and credibility as a whole, concerns whether Bingham would have entered a no contest plea, or gone to trial, using the evidence of" the Brotherwood Disciplinary Documents "to impeach him." (Appellate Brief at 12). Although disclosure of the documents may have helped Bingham, he "has not established that the evidence at issue was material." *State v. Vale*, 2023-Ohio-4287, ¶ 9-11, 31 (10th Dist.) (affirming denial of a post-sentence motion to withdraw plea where defendant alleged that evidence of a criminal investigation into the investigating officers'

conduct should have been disclosed and would have changed the proceedings' results). He fails to show there is a "reasonable probability" the result here would have been different had the Brotherwood Disciplinary Documents been disclosed. *United States v. Agurs*, 427 U.S. 97, 109-110 (1976) ("[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense"); *State v. Brown*, 2007-Ohio-4837, ¶ 49 ("undisclosed evidence is not material simply because it may have helped the defendant to prepare for trial").

{¶27} Bingham previously explained why he pleaded no contest. In fact, he set forth multiple, conflicting predominant reasons. In an earlier motion to withdraw his plea, Bingham told the trial court that his decision to plea "was largely the result of an inability of the defense to secure a subpoena for the appearance of Jeremy Calhoun as a defense witness." (Nov. 27, 2018 Motion to Withdraw Plea at 3; *see also* Appellant's Brief at 7). Bingham later averred in another motion to withdraw his plea that he "largely took the plea because the State said it would have no opposition to the $250,000 appellate bond through the appeal process." (Oct. 22, 2019 Motion to Withdraw Plea at 3; *see also* Appellant's Brief at 8). Moreover, Bingham was well aware of Brotherwood's error in the search warrant affidavit at the time he decided to enter a change of plea and knew that he could use that error to impeach Brotherwood's credibility had he proceeded to trial.

**{¶28}** Furthermore, Bingham previously severely attacked Brotherwood's credibility in his various pretrial motions, yet the State's evidence to support the convictions and sentence remained. As shown above, in Bingham's first appeal, even when this Court assumed Brotherwood employed reckless disregard for the truth when he prepared the search-warrant affidavit, we still found a sufficient factual basis to uphold the trial court's decision not to suppress the evidence collected by officers as a result of searching Bingham's property. *Bingham*, 2019-Ohio-3324, at ¶ 2 (3d Dist.). That evidence included "a firearm and a small quantity of crack cocaine concealed within a shoebox that Bingham was seen carrying into the residence," "a gallon-size freezer bag full of marijuana," "other, smaller quantities of marijuana and cocaine, and materials evidently used to manufacture crack cocaine." *Id.* Even if the Brotherwood Disciplinary Documents were severely impeaching (which they are not), Brotherwood's credibility was not determinative of Bingham's guilt or innocence or his punishment. Bingham has not proven that, "in the context of the entire record," "suppression of the [Brotherwood Disciplinary Documents] undermines confidence in the outcome" here, even assuming their relevance and admissibility. *Bethel*, 2022-Ohio-783, at ¶ 32. In fact, much of the purported newly-discovered evidence does not relate to Brotherwood's credibility. On the contrary, the information in the Brotherwood Disciplinary Documents relates to irrelevant matters that likely would have been inadmissible at trial.

**{¶29}** To us, Bingham has not established a *Brady* violation. *See State v. James*, 2020-Ohio-720, ¶ 12, 15 (3d Dist.); *Vale*, 2023-Ohio-4287, at ¶ 35 ("appellant's claim that [investigating officers'] criminal conduct is material is merely speculative and, without more, is insufficient to support a *Brady* violation"); *City of Chillicothe v. Knight*, 75 Ohio App.3d 544, 551 (4th Dist. 1992) (there was not "a reasonable probability of a different outcome so as to require a reversal of the trial court's determination pursuant to Crim.R. 16" or *Brady*, where the trial court had prohibited appellant from obtaining the police department's internal affairs records and appellant subsequently pleaded no contest). Thus, it is not a basis for establishing the requisite "manifest injustice." Crim.R. 32.1.

**{¶30}** In summary, Bingham knew about Brotherwood's error in the search warrant affidavit before his plea and the Brotherwood Disciplinary Documents would have added little to the attack on Brotherwood's credibility, which itself was not determinative. Additionally, the self-serving nature of Bingham's claim that he would not have entered the change of plea is not lost upon us and we view it with skepticism. This is especially true considering the voluminous amount of the evidence the State amassed against Bingham. *See James* at ¶ 12, 15 (affirming denial of post-sentence motion to withdraw no-contest plea where defendant did not show he would have gone to trial if he had known of the alleged newly-discovered evidence, where such evidence would not have caused the State's evidence seized as a result of the search warrant to be suppressed).

### ii. Alleged violation of Crim.R. 16

**{¶31}** Next, Bingham argues that "[t]he State's failure to disclose Brotherwood's prior disciplinary history was also a violation of Crim.R. 16." (Appellant's Brief at 17). Criminal Rule 16 provides, in part:

> Upon receipt of a written demand for discovery by the defendant, . . . the prosecuting attorney shall provide copies or photographs, or permit counsel for the defendant to copy or photograph, the following items related to the particular case . . . and which are material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state, subject to the provisions of this rule:  . . . (5) Any evidence favorable to the defendant and material to guilt or punishment[.]

Crim.R. 16(B)(5). The terms "favorable" and "material" in Crim.R. 16 "have the same meaning as they do in *Brady* and its progeny." *State v. Keene*, 81 Ohio St.3d 646, 650, 1998-Ohio-342 (1998). Also, "prosecutorial violations of Crim.R. 16 result in reversible error only when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice." *State v. Jackson*, 2005-Ohio-5981, ¶ 131 (affirming trial court's decision that failure to disclose allegedly exculpatory evidence prior to trial did not result in reversible error).

**{¶32}** The State did not violate Crim.R. 16 by not producing the Brotherwood Disciplinary Documents to Bingham. They were of a nature that did not require them to be produced under the rule.  Bingham knew about

Brotherwood's flawed search warrant affidavit. He points out that he served a discovery request seeking "[a]ny evidence favorable to the Defendant and material to guilt or punishment." (May 19, 2016 Request for Discovery). However, he concedes this request simply sought *Brady* material, which we just explained did not include the Brotherwood Disciplinary Documents. Bingham also points out that he filed a motion asking that the prosecutor give adequate notice of the State's intent to use evidence pursuant to Criminal Rule 12(E)(3). However, there is no indication the State ever intended to use any of the Brotherwood Disciplinary Documents at trial.

{¶33} We do not find this to be an extraordinary case for granting a post-sentence motion to withdraw a plea. The State did not commit a "clear or openly unjust act" by not producing the Brotherwood Disciplinary Documents to Bingham. The trial court did not abuse its discretion in finding that Bingham failed to meet his burden of establishing the existence of manifest injustice and, consequently, denying the Motion to Withdraw Plea. Bingham's first assignment of error is overruled.

### B.    Second Assignment of Error

{¶34} In his second assignment of error, Bingham contends that "[t]he trial court's failure to grant a hearing with respect to Bingham's March 10, 2023 Motion to Withdraw Plea was a violation of procedural due process because the trial court cited res judicata as the basis for its decision." (Appellant's Brief at 21).

Essentially, he claims the trial court denied the motion "without first determining whether Bingham's allegations raised, if true, constituted a 'manifest injustice' sufficient to allow [him] to withdraw his no contest plea." (*Id.*).

**{¶35}** A hearing on a post-sentence motion to withdraw a plea "is not mandatory." *State v. Moore*, 2012-Ohio-657, ¶ 13 (3d Dist.). "It is required only 'if the facts alleged by the defendant and accepted as true would require the court to permit that plea to be withdrawn.'" *Id.*, quoting *State v. Hamed*, 63 Ohio App.3d 5, 7 (8th Dist. 1989). Therefore, "before [Bingham] would be entitled to a hearing on his motion, the trial court would have to look at the allegations in [the] motion and conclude that those allegations, if taken as true, demonstrate a 'manifest injustice' as defined above." *Id.*

**{¶36}** Bingham's argument ignores the trial court's finding that Bingham did not establish "manifest injustice," as required under Crim.R. 32.1. (Apr. 26, 2023 Judgment Entry Denying Post-Conviction Motion to Withdraw Plea). Furthermore, even accepting the facts alleged by Bingham in the Motion to Withdraw Plea as true, the trial court was *not* required to permit his plea to be withdrawn. This is shown in our analysis of the first assignment of error. The trial court did not abuse its discretion in deciding not to hold a hearing on the motion. *See Moore* at ¶ 8, 17, 21 (the trial court did not abuse its discretion in denying the post-sentence motion to withdraw a plea without holding a hearing where police reports attached to the motion did not demonstrate a manifest injustice so as to warrant a hearing on the

-19-

motion, even if they tended to undermine the victim's credibility). Bingham's second assignment of error is overruled.

## IV.    CONCLUSION

{¶37} For the foregoing reasons, Bingham's assignments of error are overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgments of the Allen County Court of Common Pleas.

*Judgments Affirmed*

**ZIMMERMAN AND ZMUDA, J.J., concur.**

**\*\* Judge Gene A. Zmuda of the Sixth District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**